KAREN P. HEWITT
United States Attorney
CHRISTOPHER S. STRAUSS
Special Assistant U.S. Attorney
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893

ELIZABETH C. HADDEN
Trial Attorney
U.S. Department of Justice
Tax Division
Western Criminal Enforcement Section
P.O. Box 972, Ben Franklin Station
Washington, DC 20044

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No.  08CR0918-L |
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE STATEMENTS |
| v. | Fed. R. Evid.  801(d)(2)(C), 801(d)(2)(D), 801(d)(2)(E) |
| FE S. GARRETT | |
| Defendant. | |

Plaintiff, United States of America, by and through its counsel Karen P. Hewitt, United

States Attorney, Christopher S. Strauss, Special Assistant United States Attorney and Elizabeth C.

Hadden, Trial Attorney, Tax Division hereby submits its Motion in Limine to Introduce Statements.

The United States respectfully moves the Court to issue a pretrial ruling that statements made by

Gregory Garrett, Sr. to Internal Revenue Service Special Agent Cecila Braga are admissible against

1  Defendant as admissions by a party opponent pursuant to Federal Rules of Evidence 801(d)(2)(C),

2  801(d)(2)(D), and 801(d)(2)(E).

3       The admissibility of Gregory Garrett, Sr.'s statements is preliminary determination pursuant

4  to Fed. R. Evid. 104(a).  Rule 104(a) states that "[p]reliminary questions concerning . . . the

5  admissibility of evidence shall be determined by the court."  In making the preliminary

6  determination of admissibility, the Court is not bound by rules of evidence, other than those relating

7  to privileges.  Rule 104(a); Fed. R. Evid. 1101(d)(1).  <u>Bourjaily v. United States</u>, 483 U.S. 171,

8  175-76, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987) (The court may consider evidence that would be

9  inadmissible under the Federal Rules of Evidence); <u>Gabaig v. Gabaig</u>, 1999 U.S. App. LEXIS 32805

10  (9th Cir. Cal. Dec. 15, 1999) *citing* <u>United States v. Gordon</u>, 844 F.2d 1397, 1402 (9th Cir. 1988)

11  (The court may rely in part, but not solely, on the alleged co-conspirator's statement itself.)

12       The Court has set a motion hearing on August 25, 2008 at 2:00 P.M. and a Motion In Limine

13  hearing on September 2, 2008, at 10:00 A.M.  The United States requests an evidentiary hearing at

14  the Court's convenience and to the extent necessary for the Court to enter a pretrial ruling with

15  respect to the statements the Government seeks to introduce.

16       In support of this motion, the Government respectfully submits the following:

17                        **STATEMENT OF FACTS**

18       On April 1, 2003 Special Agent Cecilia Braga ("SA Braga") met with Internal Revenue

19  Service Special Agent Len Bradley and Special Agent Liz Zaroni and underwent a briefing with

20  respect to an undercover scenario regarding the Defendant.  During that meeting SA Braga was

21  shown photographs of Defendant and her husband, Gregory Garrett, Sr., who is an unpaid employee

22  at Defendant's tax preparation business.

23       On April 2, 2003 SA Braga met with Tech Special Agent Robert Brana who fitted SA Braga

24  with an Eagle recording device and a transmitter.  The devices were activated and placed into SA

25  Braga's purse.

26       SA Braga was driven to the Defendant's tax preparation business at 914 East 8th Street, Suite

27  213, San Diego, California.  When SA Braga went into the Defendant's tax preparation business, she

28  Government's Motion in Limine to
Introduce Statements                2                  08CR0918-L

posed as a potential client, Cecilia Vicente, who wanted her 2002 federal and state income tax

returns prepared.  SA Braga observed Gregory Garrett meeting with another client.  SA Braga had a

lengthy conversation with the Defendant regarding, among other matters, the Defendant's "style" of

tax return preparation.[1]  SA Braga left a single Form W-2 Wage and Tax Statement and her personal

information with the Defendant in order to have the Defendant prepare her tax returns.

On August 6, 2003 SA Braga met with Special Agent Ed Reyes and again was fitted with a

recording device and transmitter.  SA Braga went back to the Defendant's office to pick up the 2002

federal and state tax returns that the Defendant had prepared for her under the name of Cecilia

Vicente.  When she went into the Defendant's business, Gregory Garrett, Sr. met with SA Braga,

gave SA Braga her completed tax returns, and answered SA Braga's questions regarding the tax

returns.  Defendant was not in the office at the time.  During the conversation that SA Braga had

with Gregory Garrett, Sr., he made numerous statements regarding the false and fraudulent nature of

the federal tax return prepared for SA Braga by the Defendant.  Below transcribed excerpts of the

recorded conversation that the United States seeks to have admitted[2]:

**GREG:**  Okay.

**Braga:**  So I'm getting a refund?

**GREG:**  Yes.  That's your federal.  Let me go ahead and put this together for you.  Okay?

**Braga:**  So where do you guys do the -- the refinances -- here or at your house?

**GREG:**  No.  Right here.  Everything's done here.

**Braga:**  Can I actually have a couple of friends that want to refinance but the interest rates

are going up right now but --

**GREG:**  No.  Actually they're starting to go down.

**Braga:**  Are they starting to go down?

**GREG:**  We just got word today from our lenders.  That the rates are starting to sweeten a

---

[1]The Government also intends to introduce the recorded conversation between the defendant and SA Braga at trial pursuant to Fed. R. Evid. 801(d)(2)(A).

[2]A complete copy of the transcript is attached as Exhibit "A" for the Court's review.

1   little bit.

2       **Braga:**  Oh, that's good.

3       **GREG:**  So it's going to take a couple of weeks.  They

4   they shot up so high so quick that it caught everybody off guard but now I think they're going back

5   down.

6       **Braga:**  Because there's actually one of my friends that is considering buying a brand new

7   house in a brand new development and they need to get a pre-approval letter --

8       **GREG:**  Okay.

9       **Braga:**  -- right away if they decide to.  Is there -- is there a phone number that I could give

10      them to call Fe right away?

11      [PHONE RINGING]

12      **GREG:**  Yeah.  Yeah.  Let me get this here, just a second here.

13      **Braga:**  Okay.

14      [PHONE RINGING]

15      **GREG:**  Garrett's Realty and Mortgage.  Hello.  Hi.  How are you?  Ma'am, we have until

16      the 15th of August, and she's trying to get everybody taken care of even as we speak.  But

17      it's going to take a couple more days.  She has about 70 more to go.  Yes.  I'm pretty sure it

18      is.  Well, I'm going -- I'm going through the files right now.  She just did bunch and it's

19      going to take me maybe another four or five hours for me to go through them all.  So if yours

20      is one of them, I'll give you a call right away.  Okay?  Okay.  That's fine.  Give me a call.

21      Give me -- if I don't call you today give me a call in a couple of days.  Okay.  Bye.

22      **Braga:**  Is this -- is this my return because  --

23      **GREG:**  No.  That's your --

24      **Braga:**  -- who -- who -- who is this person, this (inaudible)?

25      **GREG:**  Okay.  Let me explain that in just a second.

26      Let me finish --

27      **Braga:**  Okay.  Okay.

28

1    **GREG:** -- doing this and get this together for you here. This -- this -- oh, shoot. That's the

2    wrong one.

3    **Braga:** This is great. I get a refund back. Last year I had to pay.

4    **GREG:** There's no state. Okay. Oh, I see. Let me see that just for a moment.

5    **Braga:** Okay.

6    **GREG:** Okay. That's the federal. (Inaudible) there's no state. Okay. (Inaudible.) This is

7    your copy here. Okay. Anyway, this is your 2002.

8    **Braga:** Okay.

9    **GREG:** And your W-2 copy (inaudible).

10    **Braga:** (Inaudible.)

11    **GREG:** Okay. Just give me a moment and let me -- let me finalize this real quick and I'll --

12    I can explain everything to you.

13    **Braga:** I'm sorry. Okay.

14    **GREG:** Okay. So you're getting back 1,417 from state.

15    **Braga:** Okay.

16    **GREG:** And 1,396 from federal. Total expected is 2,813.

17    **Braga:** Great.

18    **GREG:** Okay. Add childcare. Okay. You had a question about the childcare.

19    **Braga:** Yeah.

20    **GREG:** Okay.

21    **Braga:** Because my --

22    **GREG:** The --

23    **Braga:** -- my parents take care --

24    **GREG:** The -- oh, your parents were taking care?

25    **Braga:** Yeah. I didn't have any. I don't even know who this person is.

26    **GREG:** Oh, I see. Okay. This is her -- this is her loophole.

27    **Braga:** Her loophole?

28

1   **GREG:** Yeah. We're -- for getting you some money back because otherwise you end up

2   having to pay. Basically what the federal government does, they have a rule that says if you

3   have a childcare provider -- and in living in San Diego, a lot of them are illegal immigrants

4   from Mexico. If they refuse to give you a social security number you can state so on the

5   form that you tried to get a social and she refused to give it to you and they do allow the

6   child credit.

7   **Braga:** I won't get -- will I get in trouble for that?

8   **GREG:** No. Fe does this for everybody. This is -- this is a normal thing she does.

9   **Braga:** Even though if it's not true?

10  **GREG:** Basically your parents were taking care of your kids.

11  **Braga:** Yeah.

12  **GREG:** But if you try to do that you won't get a credit for it and you'll -- you'll have to

13  pay.

14  **Braga:** But I won't get in trouble. That's what you said.

15  **GREG:** No. No. Fe takes care of this. This is easy for her to do.

16  **Braga:** Okay.

17  **GREG:** Because this is -- this is easily -- this is easy to -- because basically what she has

18  here --

19  **Braga:** Because she also has something else over here.

20  **GREG:** Yeah. I'll show you that in a second.

21  **Braga:** Okay.

22  **GREG:** It's right here. This is the -- this is the cover for the loophole. Okay? This simply

23  says, "I requested childcare provider to furnish me her social security number" --

24  or -- or -- actually she wrote this backwards. It's supposed to be TIN number, "and she

25  refused to give me the information I needed even though I asked so many times."

26  **Braga:** Okay.

27  **GREG:** This -- this -- this covers that. So you get your deduction.

28

1    **Braga:** Okay.

2    **GREG:** And the next thing here is your -- this is your -- this is for your expenses for your

3    work as a nurse.

4    **Braga:** I didn't have any. Really. I didn't have any. I didn't give any. But --

5    **GREG:** As an RN you have them whether you know it or not. You have to pay license fees.

6    You have uniforms. What else do you have to do? Sometimes you have to attend seminars.

7    **GREG:** And --

8    **Braga:** So she just -- she just estimated --

9    **GREG:** This -- this -- this estimates -- yeah -- what you have to spend as a nurse. Okay.

10   Because as a nurse you have deductions in regards to (inaudible). You have to buy uniforms,

11   you have to get them dry cleaned, et cetera,

12   et cetera  And this is her contributions to charity. You're allowed to contribute up to five --

13   under $5,000 without receipts so that's why she --

14   **Braga:** Is that another loophole?

15   **GREG:** Yes.

16   **Braga:** Because I didn't donate anything.

17   **GREG:** Well, that doesn't matter. Okay? We do this

18   for -- we do this for the FBI as well. Okay. We have clients who are FBI, sheriffs, deputy

19   sheriff, you name it. Okay? This is covered by the rule that says you can donate under

20   $5,000 without a receipt. Anything over five -- anything over $5,000 you have to have an

21   appraised value. So don't worry about this. Again, this is another one of their loopholes that

22   we use.

23   **Braga:** Okay. . .

24   . . .

25

26

27

28   Government's Motion in Limine to
     Introduce Statements                              7                              08CR0918-L

1    **GREG:** I sure will. Okay. And on yours, 1,396 federal; 1,417 state; for a grand total of

2    $2,813. Okay. So if you do have any problems just give Fe a call. And she will take care of

3    it for you.

4    **Braga:** Okay. And what time is she here?

5    **GREG:** Probably not for another couple of hours (inaudible) she stays there all day. She

6    likes to chat too much.

7    **Braga:** I know the last time I was here we were talking for a long time and I didn't even

8    have an appointment.

9    **GREG:** I know.

10    **Braga:** Okay. So do you have a number that I can call her when -- if I have any questions?

11    How much do I owe?

12    **GREG:** Let's see, right there, 225.

13    **Braga:** 225.

14    **GREG:** Okay.

15    **Braga:** Can I get a receipt? Because this is cash.

16    **GREG:** Sure.

17    **Braga:** Two hundred twenty -- is that the normal cost?

18    **GREG:** Oh, actually --

19    **Braga:** So much.

20    **GREG:** No. Actually we're cheaper than H&R Block.

21    **Braga:** Oh, really?

22    **GREG:** They charge $25 to $30 per W-2. In addition to anything else they do. So we're

23    actually -- she's actually cheaper. Okay. She bases -- her fees are based on your annual

24    income, not on how much money you get back.

25    **Braga:** Oh, okay. And based on my what? My income

26    and --

27    **GREG:** Your annual income.

28    Government's Motion in Limine to
Introduce Statements                    8                    08CR0918-L

1    **Braga:**  And how much money I get back?  No.

2    **GREG:**  No.  We don't base it on your refund.

3    **Braga:**  Okay.

4    **GREG:**  It's based upon how much you make during the course of the year.

5    **Braga:**  Okay.  So just call her here.  This is -- this is the same one.

6    **GREG:**  Yeah, the number where I circled.  yeah.

7    **Braga:**  Okay.

8  . . .

9    **Braga:**  Okay.  Great.  Thank you so much.  So I save this for next year or no?  You guys

10    have --

11    **GREG:**  The one that's -- the one that had the envelopes you mail in and the ones that are

12    here.

13    **Braga:**  Okay.

14    **GREG:**  Basically this right here is a comparison between the way Fe does taxes and H&R

15    Block.

16    **Braga:**  So this is --

17    **GREG:**  If this was -- if this was H&R Block doing your taxes you would end up paying

18    $3,534 to IRS.

19    **Braga:**  Oh, God.

20    **GREG:**  State you would only be getting -- let me see here.  And then you had to pay the

21    state $87.  So --

22    **Braga:**  Wow.  That's a big difference.

23    **GREG:**  Yeah.

24    **Braga:**  That's because of all the loopholes she put in.

25    **GREG:**  You know what?  I'm just going to have to give this to you for 220 even because I

26    don't have any change.

27    **Braga:**  Okay.

28   Government's Motion in Limine to
     Introduce Statements                        9                        08CR0918-L

1   **GREG:**  So just hold on to that.

2   **Braga:**  You want to change this then?

3   **GREG:**  I'll just make a little notation on there.

4   **Braga:**  Okay.

5        I talked to your daughter, Dulce.

6   **GREG:**  Yeah.

7   **Braga:**  A lot.

8   **GREG:**  Oh, yeah.

9   **Braga:**  It seems like she was here the most.

10  **GREG:**  Yeah.  She is.

11  **Braga:**  I'd call and she would say something like all you guys are sleeping.  Because you

12  guys are working late

13  and -- but does she work here every day?

14  **GREG:**  Yeah.  She's our loan processor.

15  **Braga:**  Oh, so she doesn't do anything with the tax.  It's just your sons --

16  **GREG:**  No.

17  **Braga:**  -- and --

18  **GREG:**  No.  It's basically my sons, me and Fe and that's it.

19  **Braga:**  Oh.

20  **GREG:**  Let me give you this back.

21  **Braga:**  So are you the lucky one that doesn't have to help prepare these or --

22  **GREG:**  No.  Actually we all have to.  We all have to help out so we're all here -- I'm here

23  maybe 18, 19 hours a day.

24  **Braga:**  Oh, my gosh.

25  **GREG:**  So -- well, it's a lot you know (inaudible) more than 2000 clients a year so it's a big

26  headache.

27      **Braga:**  Oh, yeah.  When Dulce was telling me I think she said that -- that Fe had 500 to 700

28

1    more to go. I go, "And she's doing this by herself?"

2    **GREG:** No. Actually, like I said, I have my son here helping her.

3    **Braga:** That's Mike and Tony?

4    **GREG:** Yeah.

5    **Braga:** They're -- they also --

6    **GREG:** Well, Mike -- Mike --

7    **Braga:** -- help her prepare?

8    **GREG:** Mike -- Mike is licensed -- basically Mike and I just put them together.

9    **Braga:** And put them in the --

10   **GREG:** But Tony's licensed to -- to -- to do the tax, along with his mom so --

11   **Braga:** Oh, okay.

12   **GREG:** So he's doing them with her and between the two of them they get saturated. And

13   it's going to get worse next year, I know it because I'm going to have a lot more. Like I said,

14   I got a lot more FBI coming in, a lot more police, a lot more correctional guards that work

15   over at Otay prison. We get the prisons, we get the bus drivers, we get the nurses, we get the

16   cops.

17   **Braga:** Oh, my God. I'm already kind of scared with all this stuff here.

18   **GREG:** No. Don't be.

19   **Braga:** And then, but they know that too and they're not scared? No.

20   **GREG:** We do this for everybody.

21   **Braga:** Oh, wow.

22   **GREG:** It's something that can be -- it's defensible, that Fe can -- Fe can --

23   **Braga:** So if I get audited she'll -- she'll be right there?

24   **GREG:** Yeah. Yeah. So it's not a problem.

25   **Braga:** Okay. Okay. Okay. That sounds good. All right. Well, thank you very much. I

26   appreciate it. This was my first time here and it was pleasant. I just have to know to make

27   my appointment way in advance.

28   Government's Motion in Limine to

1   **GREG:**  Yeah.  Give me a call the day after Christmas.

2   **Braga:**  Okay.  That sounds good.

3   **GREG:**  And what we'll do is -- if you don't have your paperwork in on time we can

4   guestimate when it will arrive and tack on a couple of days for your appointment.

5   **Braga:**  Okay.

6   **GREG:**  But if you wait for your paper to come in, I'll be seeing you in August next year.

7   **Braga:**  Okay.  All right.  Well, thank you very much.  I appreciate it.

8   **GREG:**  You're welcome.

9   **Braga:**  Bye.  Nice to meet you.

10  (See Exhibit A: pgs 6-12; 14-16; 17-21)

11  **LAW AND ARGUMENT**

12  **I.      The statements made by Greg Garrett, Sr.  are admissible as admissions by a**

13  **party opponent pursuant to Federal Rule of Evidence 801(d)(2)(C)**

14          For a statement to be admissible under Federal Rule of Evidence 801(d)(2)(C), the

15  government, as the proponent of the evidence, must prove that the declarant of the statements sought

16  to be admitted is an agent of the party-opponent and that the party-opponent authorized the declarant

17  to make the statements. See United States v. Sanchez-Godinez, 444 F.3d 957, 960 (8th Cir. 2006);

18  United States v. Sokolow, 91 F.3d 396, 402 (3rd Cir. 1996); Precision Piping & Instruments, Inc. V.

19  E.I. dePont de Nemours & Co., 951 F.2d 613, 619 (4th Cir. 1991); United States v. Sanders, 749

20  F.2d 195, 199 (5th Cir. 1984). The question of whether an agency relationship exists between the

21  declarant and the party-opponent is a preliminary determination for the Court under Federal Rule of

22  Evidence 104(a); the government must show that foundation with "substantial independent

23  evidence" not by a preponderance of the evidence.  United States v. Flor, 679 F.2d 173, 178 (9th

24  Cir. 1981) *citing* United States v. Zemek, 634 F.2d 1159, 1170 (9th Cir. 1980); Hilao v. Estate of

25  Marcos, 103 F.3d 767, 775 (9th Cir. 1996).

26          Courts require that a "declarant be an agent of the party-opponent against whom the

27  admission is offered" before statements of that declarant will be admissible under Federal Rule of

28  Government's Motion in Limine to
    Introduce Statements                       12                            08CR0918-L

1   Evidence 801(d)(2)(C). Sokolow, 91 F.3d at 402; Kirk v. Raymark Indus., 61 F.3d 147, 164 (3rd

2   Cir., 1995); see also Godinez, 444 F.3d at 960 (stating that the interpreter was an agent of the

3   Defendant, and thus the interpreter's translation could be "attributable to the Defendant as his own

4   admission"); Sanders, 749 F.2d at 198-99 (stating that claim forms submitted by the Defendant's

5   employees were admissible under 801(d)(2)(C) because they were agent's of the Defendant).

6   Whether a declarant has the "authority" of an  agent of a party-opponent is determined by the laws

7   of agency. See United States v. Da Silva, 725 F.2d 828, 831-32 (2nd Cir. 1982). Under agency law,

8   the most significant test to determine if any agency relationship exists is whether the principal can

9   "control" the agent. Kirk, 61 F.3d at 164 (3rd Cir. 1995); Ferguson v. United States, 712 F. Supp.

10   775, 780 (N.D. Cal. 1989).

11          In addition to the agency requirement, a party-opponent must give a declarant "authority to

12   speak" about a particular subject matter before the declarant's statements are admissible under

13   801(d)(2)(C). See Precision Piping, 951 F.2d at 619; Sanders, 749 F.2d at 199 (5th Cir. 1984); Reid

14   Brothers Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1306 (9th Cir. 1983). However,

15   implied authority to speak on the party-opponent's behalf, rather than express authority, may be

16   inferred from the scope of actual authority that the party opponent gave to the declarant. See United

17   States v. Iaconetti, 540 F.2d 574, 577 (2nd Cir. 2002); Hanson v. Waller, 888 F.2d 806, 814 (11th

18   Cir. 1989).

19          Here, Gregory Garrett, Sr.'s agency is established through multiple sources.  First, on April

20   2, 2003 and August 6, 2003, SA Braga observed Gregory Garrett, Sr. assisting other customers while

21   she was at the office.   On April 2, 2003 when SA Braga entered Defendant's office Gregory Garrett,

22   Sr. was behind the front desk assisting another client.  She waited in the front portion of the office

23   until he was available to assist her.  At the same time, Defendant was behind the counter assisting

24   another client as well.  (See Exhibit B)

25          On August 6, 2003, SA Braga witnessed Gregory Garrett, Sr. three other clients.  He assisted

26   the first client over the phone.  (see Exhibit A: pg 7, lines 8-25; pg 8, line 1).  He explained to the

27   client when the return would be ready and that he will call them back when it was ready.  The

28

1    second client came in to the office. He assisted that client with their tax return explaining that there

2    was a problem with the return so he could not provide it to the client until he figured out the

3    problem. (see Exhibit A: pg 1, lines 9-25; pgs 2-4). He also told the client that he will find out what

4    is wrong with the return and that the client should come back later. Later on in the conversation SA

5    Braga witnessed Gregory Garrett, Sr. with a third client who came into the office. (see Exhibit A:

6    pg 12, lines 8-25; pgs 13-14). SA Braga observed Gregory Garrett, Sr. assisting this client with a

7    new appointment and providing the client with a completed return. He points out the client's refund

8    amount. He then explains to the client that they would have had to pay $8,469 instead of getting a

9    refund if the client had gone to another commercial tax return preparation firm.

10    Second, Defendant's daughter, Dulce Wickstrom further establishes Gregory Garrett, Sr.'s

11    agency. DulceWickstrom worked as a mortgage processor for the real estate service end of the

12    Defendant's business. She stated that her step father, Gregory Garrett, Sr., would meet with the

13    clients, collect the documents from the clients and collect and deposit the clients' fees. (See Exhibit

14    C.)

15    Third, Defendant herself establishes Gregory Garrett, Sr.'s agency. Defendant told Special

16    Agents Len Bradley and Maria Alvarez on December 10, 2003 that Gregory Garrett, Sr. worked at

17    her business but that he was not paid. She said that he would receive the documents from the

18    clients, contact them when the returns were complete and that he would receive the payments from

19    the clients. (See Exhibit D: para. 11, 12, 15)

20    Fourth, the taxpayers who had their returns prepared by the Defendant establish Gregory

21    Garrett, Sr.'s agency. The taxpayers will testify at trial that Gregory Garrett, Sr. would set up their

22    appointments, take their paperwork when they arrived at the office, call them when the return was

23    completed, provide them the completed return when they arrived at the office and take the payment

24    for the preparation of the tax returns. The taxpayers will also say that while they were at the office,

25    Gregory Garrett, Sr. would be working the front desk by answering the phone and dealing with other

26    clients. All of the taxpayers will testify that at some point Gregory Garrett, Sr. was involved in the

27    process of getting their tax returns prepared.

28

In addition to being Defendant's agent, Gregory Garrett, Sr. was given the authority by Defendant to make the statements he made.  As discussed above Gregory Garrett, Sr. had at least the implied authority because of the very nature of his position in the Defendant's business.  However, he also had the actual authority as stated by Defendant to SA Braga when SA Braga met with her on April 2, 2003:

> **Braga**: Do you go - - - I'm just going to drop my stuff off, but - - so when I come pick it - - you're going to call me up when it's done?
>
> **Garrett**: We'll call you.
>
> **Braga**: Do you go over the return with me?
>
> **Garrett**: My husband does.
>
> **Braga:** Oh, Okay.
>
> **Garrett:**  Yeah, if there is a question like why, most of the question is -- how can you explain why I have a little refund right now than last year.  Then I will explain.  I usually explain in the paper, I analyze --
>
> (See Exhibit B)

That actual authority was further shown by Gregory Garrett, Sr. when he told Special Agents Toni Haas and Ed Reyes on December 10, 2003 that he is employed by his wife and that his position is office assistant.  He stated that his job duties are answering phones, taking messages and filing. (See Exhibit E, paragraph 6).  He also stated that Defendant would write down for him what information to go over with the client if she was not there and she also gave him the authority to sign her name on the tax returns for her.  (See Exhibit E: paragraph 15, 50).  Therefore, the evidence establishes Gregory Garrett, Sr.'s agency and the authority granted to him by Defendant to speak on her behalf.

**II.**    **The statements made by Greg Garrett, Sr.  are admissible as admissions by a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(D)**

For a declarant's statement to be admissible under Federal Rule of Evidence 801(d)(2)(D), the government must establish the proper foundational requirements: that the statement was made by the party-opponent's agent and concerned a matter within the scope of the agency relationship. Sea-land Service, Inc. v. Lozen Intern., 285 F.3d 808, 821 (9th Cir. 2002); United States v. Chang, 207 F.3d 1169, 1176 (9th Cir. 2000).  The government must prove agency with substantial evidence under Federal Rule of Evidence 104(a), however, a preponderance of the evidence is not required. Hilao, 103 F.3d at 775 (9th Cir. 1996); United States v. Jones, 776 F.2d 412, 415 (9th Cir. 1985) (abrogated on other grounds by Hilao, 101 F.3d 767); Flor, 679 F.2d at 178. In making a Rule 104(a) preliminary determination regarding the proper foundation for the admissibility of a statement under 801(d)(2)(D), the Court may consider the out-of-court statements sought to be admitted, although the statements alone are not sufficient to establish the foundation. Fed. R. Evid. 801(d)(2); Sea Land, 285 F.3d at 821 (9th Cir. 2002); Hilao, 101 F.3d at 775; In re Coordinated Pretrial Proceeding in Petroleum Prods. Antitrust Litig., 906 F.2d 432,458 (9th Cir. 1990).

The first requirement for the admission of a statement of an out-of-court declarant under 801(d)(2)(D) is that the declarant is an agent of the party opponent. Sea-Land, 285 F.3d at 821; Chang, 207 F.3d at 1176.  The Federal Rules of Evidence do not define agency, but courts have "adopted and applied the traditional meanings of this term as reflected by the federal common law of agency." Gomez v. Rodriguez, 344 F.3d 103, 116 (1st Cir. 2003); see also United States v. Ellyson, 326 F.3d 522, 527 (4th Cir. 2003); City of Tuscaloosa v. Harcros Chems., Inc. 158 F.3d 548, 557 (11th Cir. 1998); Lippay v. Christos, 996 F.2d 1490, 1497 (3rd Cir. 1993); United States v. Saks, 964 F.2d 1514,1523-24 (5th Cir. 1992). To establish that an agency relationship exists for purposes of 801(d)(2)(D), the party-opponent must have some control over the actions of the declarant, or the declarant must be answerable and responsible to the party-opponent.  United States v. Rioux, 97 F.3d 648, 660 (2nd Cir. 1996) (stating that the government need only establish that the declarant was "answerable and directly responsible" to the party-opponent to establish an agency relationship); Lippay, 996 F.2d at 1499 (stating that "continuous, supervisory control" is required to establish an agency relationship).

1    In this case Greg Garret's agency and Defendant's control over that agency is established

2   through statements by Defendant herself , statements by Gregory Garrett, Sr. and by the

3   observations of SA Braga when she was in the office.  Defendant told Special Agents Len Bradley

4   and Maria Alvarez on December 10, 2003 that Gregory Garrett, Sr. worked at her business but was

5   not paid.  She said that Gregory Garrett, Sr. would collect documents from the clients, would contact

6   them when the return was complete and would collect payment from the clients.  She also said that

7   Gregory Garrett, Sr. would pass tax questions on to her. (Exhibit E: paragraph 6).  Greg Garret's

8   duties at the business will be further confirmed by the taxpayers at trial when they testify about their

9   interactions with him while they were getting their tax returns prepared.  His duties are also

10   confirmed by Defendant's daughter, Dulce Wickstrom.  (Exhibit C).  On April 2, 2003, Defendant

11   told the SA Braga that when SA Braga's return was complete, Gregory Garrett, Sr. would go over it

12   with her.  (Exhibit B).

13    Gregory Garrett, Sr. told Special Agents Toni Haas and Ed Reyes on December 10, 2003 that

14   he was employed by his wife and that his position was office assistant.  His job duties were

15   answering the phones, taking messages and filing.  He said he held the position for 3 years.  He also

16   stated that if Defendant was not in the office then he would review the tax returns with clients.  He

17   would show the client how much they owed or if they were getting a refund.  He said that sometimes

18   Defendant would write down what information he should go over with the client if she was not

19   going to be around.  He also stated that sometimes Defendant would give him the authority to sign

20   her name to the tax returns.  (Exhibit F: paragraph 6, 15, 50)

21    When SA Braga was in Defendant's office she witnessed Gregory Garrett, Sr. assist 3

22   clients.  He assisted one over the phone by explaining when their return would be ready.  He assisted

23   two others when they came into Defendant's office by explaining the status of their tax returns.  (see

24   Exhibit A: pg 7, lines 8-25; pg 8, line 1;  pg 1, lines 9-25; pgs 2-4; pg 12, lines 8-25; pgs 13-14)

25    In addition to an agency relationship, for a statement by a declarant to be admissible, the

26   statement must be made within the scope of the declarant's agency. Chang, 207 F.3d at 1176. "'The

27   statement need only concern matters within the scope of the agency;' the statements 'need not be

28   Government's Motion in Limine to
     Introduce Statements                    17                              08CR0918-L

1   made within the scope of the agency.'" Id. (quoting In re Sunset Bay Assocs., 944 F.2d 1503, 1519

2   (9th Cir. 1991)). Moreover, unlike under 801(d)(2)(C), the agent need not be specifically authorized

3   to speak about the subject matter. United States v. Portsmouth Paving Co., 694 F.2d 312, 321 (4th

4   Cir. 1982); compare Fed. R. Evid. 801(d)(2)(C) (explicitly stating that authorization is required)

5   with Fed. R. Evid. 801(d)(2)(D) (making no mention of an authorization requirement). Additionally,

6   "facts regarding the agent's duties are clearly relevant to the analysis." Sana v. Hawaiian Cruises,

7   LTD. 181 F.3d 1041, 1045-46 (9th Cir. 1999) (determining that the declarants were acting within the

8   scope of their agency after examining facts related to the agent's duties); City of Long Beach v.

9   Standard Oil Co. of Calif., 46 F.3d 929, 937 (9th Cir. 1995) (declining to admit declarant statements

10   because the proffering party did not introduce evidence regarding the nature of the declarant's

11   responsibilities).

12        The statements made by Gregory Garrett, Sr. to SA Braga were within the scope of his

13   agency. SA Braga went to Defendant's office to pick up her return. Gregory Garrett, Sr. was

14   working the front desk and explained that the Defendant was not in the office. Gregory Garrett, Sr.

15   was doing exactly the things that the Defendant told him to do. The Defendant had even told SA

16   Braga that Gregory Garrett, Sr. would go over the return with her and that is exactly what Gregory

17   Garrett, Sr. did. Gregory Garrett, Sr. provided the return to SA Braga and he answered any

18   questions she had regarding the return. He also provided explanations for the false and fraudulent

19   deductions on SA Braga's returns and other clients' tax returns. He explained the document that the

20   Defendant prepared which showed the tax that would have been due if the tax return had been

21   prepared by another commercial tax return preparation firm. Finally, when SA Braga was at

22   Defendant's office she witnessed Gregory Garrett, Sr. Assist two other clients with their tax returns

23   and even point out the difference in their returns between Defendant's preparation and if they had

24   gone to another commercial tax return preparation firm. (see Exhibit A: pg 1, lines 9-25; pgs 2-4; pg

25   12, lines 8-25; pgs 13-14). Everything Gregory Garrett, Sr. said to SA Braga when she picked up

26   the return was within the scope of his agency.

27

28   Government's Motion in Limine to
     Introduce Statements                         18                              08CR0918-L

1    **III.    The statements made by Greg Garrett, Sr. are admissible as admissions by a**

2    **party opponent pursuant to Federal Rule of Evidence 801(d)(2)(E)**

3        A declarant's statement is admissible against a party-opponent under Fed. R. Evid.

4    801(d)(2)(E) if a conspiracy exists between the declarant and the party opponent, and the declarant's

5    statements are made during the course and in furtherance of the conspiracy. Bourjaily v. United

6    States, 483 U.S. 171, 171-72 (1987); United States v. Bowman, 215 F.3d 951, 960-61 (9th Cir

7    2000). Under Rule 104(a), the government must prove the foundational requirements for the

8    admissibility of co-conspirator statements under 801(d)(2)(2)(E) by a preponderance of the

9    evidence. Bourjaily, 483 U.S. at 171-72; Bowman, 215 F.3d at 960; United States v. Kelly, 864 F.2d

10    569, 573 (9th Cir. 1989). The statements sought to be admitted, although not sufficient in themselves

11    to establish their admissibility, may be considered by the court in making its preliminary

12    determinations regarding the existence of a conspiracy and whether the statements were made in

13    furtherance of such a conspiracy.  Bourjaily, 483 U.S. at 172; Gabaig v. Gabaig, 1999 U.S. App.

14    LEXIS 32805 (9th Cir. Cal. Dec. 15, 1999) *citing* United States v. Gordon, 844 F.2d 1397, 1402 (9th

15    Cir. 1988) (The court may rely in part, but not solely, on the alleged co-conspirator's statement

16    itself.)    Additionally, "a conspiracy may be proven by circumstantial evidence and inferences drawn

17    from such evidence." United States v. Ladum, 141 F.3d 1328, 1341 (9th Cir. 1998).

18        Although the existence of a conspiracy is required, neither the declarant  nor the party-

19    opponent need to be charged with conspiracy before the government may admit statements under

20    801(d)(2)(E).  Coconspirator exception to hearsay rule may be invoked even though Defendant is

21    not charged with crime of conspiracy.  United States v. Reynolds, 919 F.2d 435 (7th Cir. 1990)( It is

22    not necessary to charge conspiracy in order to take advantage of rule permitting admission of

23    coconspirator statements that would otherwise be hearsay; it is enough to show that criminal venture

24    existed and that statements took place during and in furtherance of that scheme.);  United States v.

25    Johnson-Wilder, 29 F.3d 1100 (7th Cir. 1994)(Testimony regarding Defendant's statements was

26    properly admitted as admissions of party-opponent, not as coconspirator statements, since no

27    conspiracy was charged, hence court did not err in not giving jury instruction regarding admission of

28

1   coconspirator statements.); <u>United States v. Peralta</u>, 941 F.2d 1003, 1006 (9th Cir. 1991) *citing*

2   <u>United States v. Gil</u>, 604 F.2d 546 (7th Cir. 1979) (holding that it makes no difference whether the

3   declarant or any other "partner in crime" could actually be tried, convicted and punished for the

4   crime of conspiracy.); <u>Kelly</u>, 864 F.2d at 569, 573 (7th Cir. 1989) (stating that "Rule 801(d)(2)(E)

5   applies not only to conspiracies but also to joint ventures, and that a charge of criminal conspiracy is

6   not required").  Moreover, only the party-opponent and the declarant need to be members of the

7   conspiracy, not the witness testifying to the statement in court. <u>United States v. Williams</u>, 989 F.2d

8   1061, 1067-69 (9th Cir. 1993); <u>United States v. Zavala</u>, 853 F.2d 1512, 1516 (9th Cir. 1988).

9       "[W]hen inquiring whether a statement was made in furtherance of a conspiracy, we do not

10  focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in

11  making it." <u>Zavala</u>, 853 F.2d at 1516 (internal quotations omitted). Statements are made in

12  furtherance of a conspiracy "when a declarant seek[s] to induce [the listener] to deal with the

13  conspirators or in any other way to cooperate or assist in achieving the conspirators' common

14  objective, the declaration may be admissible." <u>Zavala</u>, 853 F.2d at 1516.  Also a conspirator need

15  not share in or even know all of the conduct of a co-conspirator, as long as all conspirators share a

16  common purpose and know that they are part of a larger operation.  <u>United States v. Perez</u>, 280 F.3d

17  318, 347 (3d Cir. 2002).

18      Here, Gregory Garrett, Sr. worked the front desk of Defendant's tax preparer office.  He

19  answered the phones, made appointments, collected documents, contacted clients when returns were

20  complete, explained the returns to the clients and collected fees.  All of the taxpayers will say at trial

21  that they dealt with Gregory Garrett, Sr. at some point throughout the process of getting their tax

22  returns prepared.  Gregory Garrett, Sr. stated on December 10, 2003 that he had been working the

23  front desk for 3 years.  (Exhibit F: paragraph 6).  Therefore, he was working at Defendant's business

24  during the years that all of the taxpayers had their 2001 and 2002 federal income tax returns

25  prepared, including when SA Braga went undercover into Defendant's office.

26      SA Braga observed Gregory Garrett, Sr. assisting three other customers while she was at the

27  office.  As discussed above he assisted one over the phone and two more in person in the office.

28

1   (see Exhibit A: pg 7, lines 8-25; pg 8, line 1;  pg 1, lines 9-25; pgs 2-4; pg 12, lines 8-25; pgs 13-14).

2   The third client is the most telling.  SA Braga witnessed Gregory Garrett, Sr. explaining to the client

3   how they would have had to pay a over $8,000 in taxes instead of getting a refund if they had gone

4   to another commercial tax return preparation firm.   (see Exhibit A: pg 12, lines 8-25; pgs 13-14).

5   These actions by Gregory Garrett, Sr. show his complete participation in the conspiracy and show

6   his intent in furthering that conspiracy.

7           Defendant stated that Gregory Garrett, Sr. worked for her and that he performed all of the

8   above duties.  (See Exhibit C: paragraph 11, 12, 15).  Defendant told SA Braga that Gregory Garrett,

9   Sr. would go over the return with her which shows that he understood enough of what Defendant did

10  on the return to explain it to the clients.  (See Exhibit B).  When Gregory Garrett, Sr. answered SA

11  Braga's questions regarding her return he explained how Defendant used "loopholes" to get clients

12  larger refunds.  (Exhibit A: pg 12, line 4; pg 18, line 10).  He explained that SA Braga would get a

13  larger refund with Defendant than with another tax preparation service.  (See Exhibit A: pg 17, line

14  25 - pg 18).  He also told SA Braga that if she gets audited, Defendant would assist her.  (See

15  Exhibit A: pg 20, line 25 - pg 21).

16          Gregory Garrett, Sr. knew everything that Defendant was doing on the tax returns and his

17  statements were calculated to further a conspiracy between he and Defendant to defraud the United

18  States.  Gregory Garrett Sr.'s statements were meant to convince SA Braga that what Defendant was

19  doing on her tax return was legal and that she did it for everyone.  His statements were meant to

20  assuage any concern SA Braga had with respect to the legality of Defendant's fraudulent preparation

21  of her tax return, thereby increasing the chances that such a client would return the following year

22  and/or refer her friends to Defendant.  Gregory Garrett, Sr. and Defendant conspired to defraud the

23  IRS and did this to increase Defendant's business through accomplishing higher refunds for her

24  clients.  Defendant's business was based very heavily on referrals from her clients.  (Exhibit F:

25  paragraph 12).  Defendant even told SA Alvarez that she had attempted to advertise her taz

26  preparation business but wasn't very successful so she only obtained clients by word of mouth from

27  her current clients.  (Exhibit D: paragraph 14).  Defendant also stated that her business has steadily

28

1   increased with these referrels.  (Exhibit D: paragraph 14).  Therefore, it was important that she got

2   her clients larger refunds so that her clients would refer their friends and co-workers to her.  Gregory

3   Garrett, Sr. also had a financial stake in the conspiracy because he is married to Defendant therefore

4   when her business was doing well he benefitted.  Gregory Garrett, Sr. had full knowledge of the

5   conspiracy, participated in the conspiracy and furthered the conspiracy for the benefit of he and

6   Defendant.  Therefore, any statements he made regarding this conspiracy are admissible against

7   Defendant.

8                                            **CONCLUSION**

9        For all of the reasons stated, Gregory Garrett, Sr.'s statements to SA Braga on August 6,

10  2003 are admissible as admissions of a party opponent pursuant to Federal Rules of Evidence

11  801(d)(2)(C), 801(d)(2)(D), and 801(d)(2)(E).

12

13

14                                 DATED: August 14, 2008

15

16                                 /s/ Christopher S. Strauss
                                   Christopher S. Strauss
17                                 Special Assistant United States Attorney
                                   Attorney for Plaintiff
18                                 United States of America
                                   Email: Christopher.S.Strauss@usdoj.gov
19

20

21

22

23

24

25

26

27

28   Government's Motion in Limine to
     Introduce Statements                    22                      08CR0918-L

1
2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

3
4
5
6
7
8

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0918-L |
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| FE S. GARRETT, | ) | |
| Defendant. | ) | |

9  IT IS HEREBY CERTIFIED THAT:

10      I, Christopher S. Strauss, am a citizen of the United States and am at least eighteen years of age.

11  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12      I am not a party to the above-entitled action.

13      I have caused service of GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE

14  STATEMENTS, pro se, by sending a copy of the motion via Federal Express on August 14, 2008 to

15  Defendant at the following address:

16

17  Fe Garrett
    The Geo Group
18  Reg. # 0799-0298
    Western Region Detention Facility
19  220 West C Street
    San Diego, CA 92101
20
    //
21
22
23
24
25
26
27
28

23

1

2

3

4   I have caused service of GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE

5 STATEMENTS on Defendant's standby counsel by electronically filing the foregoing with the Clerk

6 of the District Court using its ECF System, which electronically notifies them:

7

8 Erica Kristine Zunkel
 Erica_zunkel@fd.org
9 Federal Defenders of San Diego
 225 Broadway, Suite 900
10 San Diego, CA 92101

11

12   I declare under penalty of perjury that the foregoing is true and correct.

   Executed on August 14, 2008.

13

14

15         /s/ Christopher S. Strauss
          CHRISTOPHER S. STRAUSS
16          Special Assistant United States Attorney

17

18

19

20

21

22

23

24

25

26

27

28 Government's Motion in Limine to
 Introduce Statements      24       08CR0918-L