1  KAREN P. HEWITT
   United States Attorney
2  CHRISTOPHER S. STRAUSS
   Special Assistant U.S. Attorney
3  United States Attorney's Office
   880 Front Street, Room 6293
4  San Diego, California 92101-8893

5  Attorneys for Plaintiff
   United States of America
6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                                    )  Criminal Case No.  08CR0918-L
                                      )
11  UNITED STATES OF AMERICA,         )  GOVERNMENT'S OMNIBUS RESPONSE
                                      )  AND OPPOSITION TO DEFENDANT'S
12                 Plaintiff,         )  MOTIONS:
                                      )
13         v.                         )  (1)   TO COMPEL DISCOVERY AND
                                      )        PRESERVE EVIDENCE;
14  FE S. GARRETT                     )  (2)   TO SUPPRESS STATMENTS;
                   Defendant.         )  (3)   TO SUPPRESS EVIDENCE;
15                                    )  (4)   DISMISS INDICTMENT DUE TO
                                      )        MISINSTRUCTION OF GRAND
16  _____  )        JURY;
                                         (5)   DISMISS INDICTMENT DUE TO
17                                             UNDUE DELAY IN FILING THE
                                               CHARGES;
18                                       (6)   DISMISS INDICTMENT DUE TO
                                               SELECTIVE PROSECUTION;
19                                       (7)   DISMISS THE INDICTMENT DUE TO
                                               THE GOVERNMENT MISLEDING
20                                             THE GRAND JURY;
                                         (8)   DISMISS INDICTMENT FOR
21                                             PROSECUTORIAL MISCONDUCT;
                                         (9)   TO ORDER THE GOVERNMENT TO
22                                             DISCLOSE IDENTITY OF
                                               INFORMANT; AND
23                                       (10)  TO PRODUCE WITNESS AND
                                               EXHIBIT LIST
24                                       TOGETHER WITH STATEMENT OF FACTS
                                         AND MEMORANDUM OF POINTS AND
25                                       AUTHORITIES.

26

27

28

1    Plaintiff, United States of America, by and through its counsel Karen P. Hewitt, United

2  States Attorney, and Christopher S. Strauss, Special Assistant United States Attorney, hereby

3  submits the following Response and Opposition to Defendant's Motions.  In support of this

4  Response and Opposition, the United States avers the following:

5                                              **I**

6                            **STATEMENT OF THE CASE**

7    Defendant, Fe S. Garrett, was a self-employed individual who, from at least 1998 through

8  2006, earned and received income from two businesses: a business in which she earned and received

9  fees for providing various accounting, bookkeeping and tax-related services to clients, including tax

10 return preparation services; and a real estate sales and loan-related business in which she earned and

11 received fees and commissions for providing various services to clients, including mortgage re-

12 financing services.  In her tax return preparation business, Defendant prepared false and fraudulent

13 federal income tax returns that claimed overstated and/or fabricated itemized deductions and child

14 care expenses.  Defendant also filed her own false and fraudulent federal income tax returns that

15 understated her businesses' gross receipts and, for tax years 2001 and 2002, falsely claimed the

16 Head of Household filing status.  Finally, Defendant failed to pay the federal income tax she self-

17 reported she owed for tax years 2001 through 2006.

18    On May 29, 2008, a federal grand jury returned a Superseding Indictment charging

19 Defendant with thirty counts of violations of the Internal Revenue Laws.  Counts One through

20 Twenty allege aiding and assisting in the preparation and presentation of false tax returns for tax

21 years 2001 and 2002, in violation of Title 26, United States Code Section 7206(2);  Counts Twenty-

22 one through Twenty-four allege filing false personal income tax returns for tax years 2001, 2002,

23 2004 and 2005, in violation of Title 26, United States Code Section 7206(2);  Counts Twenty-five

24 through Thirty allege failing to pay federal income tax for tax years 2001 through 2006, inclusive, in

25 violation of Title 26, United States Code Section 7203.

26

27

28 Government's Omnibus Response and
   Opposition to Defendant's Motions              2                           08CR0918-L

1

**II**

2

3

**DEFENDANT'S MOTION TO COMPEL AND PRESERVE EVIDENCE SHOULD BE DENIED BECAUSE DEFENDANT HAS RECEIVED AND WILL CONTINUE TO RECEIVE ALL DISCOVERY TO WHICH SHE IS ENTITLED**
**Def. Mot. pp. 2-12**

4

5       The United States has and intends to continue to fully comply with its discovery obligations

6   under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the

7   Federal Rules of Criminal Procedure.  On April 23 and 29, 2008, the Government provided to

8   defendant's then-counsel over 5,000 pages of discovery on two CD's.  The Government was advised

9   that that discovery in hard copy has been provided to Defendant by stand-by counsel.  The discovery

10  was accompanied by a cover letter and detailed index of the discovery, including the bates-stamp

11  range of each set of documents and a description of the documents.  Since that time, the Government

12  has continued to supplement its discovery in accordance with Fed. R. Crim. P. 16(c).  On May 29,

13  2008, the Court granted Defendant's motion to proceed pro se.  (Rec. Doc. No. 25).  Since that time,

14  additional discovery has been sent by Federal Express directly to Defendant on June 12, 2008, June

15  16, 2008, July 22, 2008, and August 14, 2008.  A copy of each set of supplemental discovery has

16  also been provided to stand-by counsel concurrently with the production to Defendant.  Each set of

17  discovery has been accompanied by a cover letter containing the descriptions of evidence provided

18  and the bates-stamp range of the documents.

19      The discovery provided to Defendant includes all grand jury exhibits, grand jury testimony

20  of prospective Government witnesses, memoranda of interview with prospective Government

21  witnesses, Internal Revenue Service records of the civil audits of Defendant's clients who the

22  Government expects to call as witnesses at trial, as well as all relevant tax returns, Internal Revenue

23  Service transcripts, and bank account records of twelve bank accounts into which Defendant

24  deposited business receipts.

25      In addition, the Government has made available to the defense thirty-eight boxes of

26  documents and other objects seized pursuant to a search warrant executed at Defendant's business

27

28

office and a consent search of Defendant's daughter's residence.  Representatives of the Federal Defenders of San Diego have twice met with the Internal Revenue Service and reviewed documents and objects seized pursuant to the searches.

The Government has complied and continues to comply with its discovery obligations. Accordingly, the Defendant's motion to compel discovery is moot.  However, the Government submits the following responses to Defendant's specific requests.

### (1)    The Defendant's Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements.  The Government has informed Defendant of all written statements that are known to the undersigned Special Assistant U.S. Attorney at this date.  The Government has also provided to Defendant audio recordings of Defendant's and Defendant's agents contacts with an undercover Internal Revenue Service Special Agent and transcripts of those recordings.  If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

### (2)    Arrest Reports and Notes

The United States has provided Defendant with the arrest report regarding her arrest on March 28, 2008. The Government objects to providing Defendant with a copy of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir.

1   1980).  Rough notes do not constitute "statements" in accordance with the Jencks Act.  See United

2   States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under

3   the Jencks Act where notes were scattered and all the information contained in the notes was

4   available in other forms).  The notes are not Brady material because the notes do not present any

5   material exculpatory information, or any evidence favorable to Defendant that is material to guilt or

6   punishment.  Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes

7   were neither favorable to the defense nor material to defendant's guilt or punishment); United States

8   v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady

9   evidence was insufficient).  Agent rough notes, if any exist, will be preserved, but they will not be

10  produced as part of Rule 16 discovery.

11          **(3)    Brady Materiall**

12          Again, the United States is well aware of and will continue to perform its duty under Brady

13  v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose

14  exculpatory evidence within its possession that is material to the issue of guilt or punishment.

15  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be,

16  favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in

17  United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does

18  not have a constitutional duty to disclose every bit of information that might affect the jury's

19  decision; it need only disclose information favorable to the defense that meets the appropriate

20  standard of materiality."  Id. at 774-775 (citation omitted).

21          The United States will turn over evidence within its possession which could be used to

22  properly impeach a witness who has been called to testify.

23          Although the United States will provide conviction records, if any, which could be used to

24  impeach a witness, the United States is under no obligation to turn over the criminal records of all

25  witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

26  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

27

28  Government's Omnibus Response and
    Opposition to Defendant's Motions              5                              08CR0918-L

1    chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607

2    F.2d 1305, 1309 (9th Cir. 1979).

3        Finally, the United States will continue to comply with its obligations pursuant to

4    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

5        **(4)    Sentencing Information**

6        The United States is not obligated under Brady to furnish a defendant with information

7    which she already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady

8    is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already

9    known to the defendant.  In such case, the United States has not suppressed the evidence and

10   consequently has no Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

11       But even assuming Defendant does not already possess the information about factors which

12   might affect her guideline range, the United States would not be required to provide information

13   bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty

14   and prior to her sentencing date.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.

15   1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the

16   disclosure remains in value.").  Accordingly, Defendant's demand for this information is premature.

17       **(5)    Defendant's Prior Record**

18       The Government knows of no prior criminal record of Defendant.  Should the Government

19   become aware of any such record, the defendant will be provided with any information in the

20   Government's possession about said prior record.

21       **(6)    Proposed 404(b) Evidence**

22       By letter dated August 7, 2008, the United States gave Defendant notice of its intent to

23   introduce evidence pursuant to Fed. R. Evid. 404(b).  The Government believes that the evidence

24   detailed in the letter, a copy of which is attached as Exhibit 1, is not subject to Rule 404(b).

25   However, in an abundance of caution, the Government provided Defendant notice pursuant to Rule

26   404(b).

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions            6                    08CR0918-L

1  **(7)**   **Evidence Seized**

2       The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

3  allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

4  evidence which is within the possession, custody or control of the United States, and which is

5  material to the preparation of Defendant's defense or is intended for use by the United States as

6  evidence in its case-in-chief, or was obtained from or belongs to Defendant, including photographs.

7  The United States has made all such evidence available to stand-by counsel and Defendant's

8  investigators from the Federal Defenders office and will continue to comply with any request for

9  inspection.

10      The United States, however, need not produce rebuttal evidence in advance of trial.  United

11 States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

12  **(8)**   **Preservation of Evidence**

13      The United States will preserve all evidence to which Defendant is entitled pursuant to the

14 relevant discovery rules.  However, the United States objects to any blanket request to preserve all

15 physical evidence.

16  **(9)**   **Law Enforcement Personnel Files – *Henthorn* Material**

17      The United States will continue to comply with its obligations pursuant to United States v.

18 Henthorn, 931 F.2d 29 (9th Cir. 1991).

19  **(10)**   **Tangible Objects**

20      The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

21 allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

22 tangible objects seized that are within its possession, custody, or control, and that are either material

23 to the preparation of Defendant's defense, or are intended for use by the Government as evidence

24 during its case-in-chief at trial, or were obtained from or belong to Defendant.   The Government

25 need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d

26 574, 584 (9th Cir. 1984).

27

28 Government's Omnibus Response and
   Opposition to Defendant's Motions                7                      08CR0918-L

1    Again, the United States is well aware of and will continue to perform its duty under Brady

2    v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose

3    exculpatory evidence within its possession that is material to the issue of guilt or punishment.

4    **(11)    Expert Witnesses**

5    On July 31, 2008, in accordance with 16(a)(1)(G), the Government filed notice of its intent

6    to introduce summary expert witness testimony summaries pursuant to Fed. R. Evid. 1006.  (Rec.

7    Doc. Nos. 38, 39).  The Government filed Revenue Agent Ramirez's resume outlining his

8    qualifications to testify as to the tax consequences of the evidence the Government anticipates will

9    be introduced at trial.  On August 12, 2008, the Government provided to Defendant and stand-by

10   counsel a detailed letter explaining the bases for Agent Ramirez's anticipated testimony, summary

11   schedules of bank records and draft tax computations based upon the evidence the Government

12   anticipates will be introduced at trial.

13   **(12)    Impeachment Evidence**

14   As stated previously, the United States has already or will turn over evidence within its

15   possession which could be used to properly impeach a witness who has been called to testify.

16   **(13)    Criminal Investigation of Government Witness**

17   Defendants are not entitled to any evidence that a prospective witness is under criminal

18   investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

19   witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

20   United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of

21   prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

22   States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the

23   Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant

24   with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at

25   1026).

26   The Government will, however, provide the conviction record, if any, which could be used to

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions                8                           08CR0918-L

1  impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

2  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

3  chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607

4  F.2d 1305, 1309 (9th Cir. 1979).  As is the case of any uncharged prior misconduct attributable to

5  government witnesses, the existence of a criminal investigation of any government witness will be

6  disclosed if known by the Government and required by the doctrine of <u>Brady v. Maryland</u>, 373 U.S.

7  83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  The Government, however, has no

8  affirmative duty to investigate for <u>Brady</u> material for Defendants.

9       **(14)**    **<u>Evidence of Bias or Motive to Lie</u>**

10       The United States is unaware of any evidence that has not already been turned over the

11  Defendant indicating that a prospective witness is biased or prejudiced against Defendant.

12  Compliance with the Jencks Act fulfills <u>Brady</u> turn-over requirements.  <u>United States v. Jones</u>, 612

13  F.2d 453, 455 (9th Cir.), <u>cert. denied</u>, 445 U.S. 966 (1980) ("<u>Brady</u> does not overcome the strictures

14  of the Jencks Act.").  The Government has provided the witness statements pursuant to the Jencks

15  Act and memoranda of interview of prospective Government witnesses.

16       Additionally, <u>Brady</u> does not compel disclosure of evidence available to the defense from

17  other sources or evidence that the defense already possesses.  <u>United States v. Hicks</u>, 848 F.2d 1,

18  (1st Cir. 1988).  Defendant has access to information regarding her former clients, family members,

19  and other witnesses in this case, with the exception of Government investigators.  Any evidence

20  regarding any bias of any government witness will be disclosed if known by the Government and

21  required by the doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405

22  U.S. 150 (1972).

23       **(15)**    **<u>Evidence of Perception, Recollection, Communication, Truth-Telling</u>**

24       The United States is unaware of any evidence indicating that a prospective witness has a

25  problem with perception, recollection, communication, or truth-telling.

26

27

28  Government's Omnibus Response and
   Opposition to Defendant's Motions         9         08CR0918-L

1      **(16)   <u>Witness Addresses</u>**

2           Federal Rule of Criminal Procedure 16 does not require the Government to disclose the

3    names and addresses of its witnesses except in capital cases.  <u>See</u> <u>Weatherford v. Bursey</u>, 429 U.S.

4    545, 559 (1977); <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992) (citing <u>United States</u>

5    <u>v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir.

6    1996).   In its trial memorandum, the Government will provide Defendant with a list of all witnesses

7    whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.

8    <u>See</u> <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907,

9    910 (9th Cir. 1987).

10          The Government objects to any request that the Government provide a list of every witness

11   to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

12   for granting such broad requests," and a request for the names and addresses of witnesses who will

13   not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  <u>United States v. Hsin-</u>

14   <u>Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502

15   (D. Del. 1980)).  The Government is not required to produce all possible information and evidence

16   regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8

17   (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

18   of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

19          **(17)   <u>Witnesses Favorable to the Defendant</u>**

20          As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u>

21   and its progeny.

22          **(18)   <u>Statements Relevant to the Defense</u>**

23          To reiterate, the United States will comply with all of its discovery obligations.  However,

24   "the prosecution does not have a constitutional duty to disclose every bit of information that might

25   affect the jury's decision; it need only disclose information favorable to the defense that meets the

26   appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions              10                              08CR0918-L

1     **(19)**    <u>**Jencks Act Material**</u>

2       The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on

3 direct examination, the Government must give the Defendant any "statement" (as defined by the

4 Jencks Act) in the Government's possession that was made by the witness relating to the subject

5 matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is

6 (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2)

7 a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement,

8 or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to

9 a witness to see whether or not the government agent correctly understood what the witness was

10 saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v.</u>

11 <u>Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425 U.S. 94, 98

12 (1976)). While the Government is only required to produce all Jencks Act material <u>after</u> the witness

13 testifies, the Government has already provided most (if not all) Jencks Act material and additional

14 memoranda of interview of prospective Government witnesses in advance of trial in order to avoid

15 any needless delays.

16     **(20)**    <u>**Giglio Information**</u>

17       As stated previously, the United States will comply with its obligations pursuant to <u>Brady v.</u>

18 <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

19 1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

20     **(21)**    <u>**Agreements Between the Government and Witnesses**</u>

21       The Government has not made or attempted to make any agreements with prospective

22 Government witnesses for any type of compensation or immunity for their cooperation or testimony.

23     **(22)**    <u>**Informants and Cooperating Witnesses**</u>

24       This investigation began as a result of an <u>anonymous</u> informant's submission to the Internal

25 Revenue Service Center regarding Defendant's practice of preparing false and fraudulent tax returns for

26 her clients. The Government is unaware of that informant's identity. A copy of the report mailed to the

27

Internal Revenue Service by the informant is attached to this Response and Opposition as Exhibit 2. The informant did not disclose his or her identity in the report submitted. <u>See</u> Ex. 2. If the Government becomes aware of the identity of an informant in this case and that the informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. <u>Roviaro v. United States</u>, 353 U.S. 53, 60-61 (1957); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997) (same). There is no "cooperating witness" involved in this case who has been promised any benefit in exchange for information or testimony.

### (23)    **Bias by Informants or Cooperating Witnesses**

The United States is unaware of the identity of any informant and there is no "cooperating witness."

### (24)    **Law Enforcement Personnel Files**

The United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). The government will have any testifying agent's personnel files reviewed prior to trial and bring to the defendants' attention any information or evidence of perjurious or dishonest conduct. <u>United States v. Jennings</u>, 960 F.2d 1488 (9th Cir. 1992). The government's prosecutors are not, however, required to conduct a personal review of these files.

### (25)    **Training Manuals and Policies of Relevant Law Enforcement Agencies**

The United States objects to any defense request for discovery of policies, instructions and training manuals regarding the interrogation of subjects. There was no post-arrest interrogation in this case, and Defendant's remaining requests are inapplicable to this case.

### (26)    **Performance Goals and Policy Awards**

The United States objects to any request for disclosure of performance goals and policy awards with respect to the detection and interruption of criminal operations involving narcotics cases and the detection of contraband. None of these issues are involved in this criminal tax case.

1

### (28)    Scientific Tests or Examinations

As noted above, the Government has given Defendant notice of its intent to call a summary expert witness trained in taxation and accounting, and has provided Defendant draft summary schedules of bank records and tax computations. There are no scientific tests or examinations involved in this case.

### (29)    Residual Request

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to any broad and unspecified residual discovery request.

Because the Government has complied with its discovery obligations, Defendant's Motion to Compel and Preserve Discovery should be denied.

### III.

### DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED
### Def. Mot. pp. 13-14

### 1.    Defendant's Statements

On April 2, 2003, an undercover Internal Revenue Service Special Agent went to Defendant's tax preparation business to have income tax returns prepared for tax year 2002. During that meeting, Defendant made numerous statements to the undercover agent regarding her fraudulent method of preparing tax returns, including statements regarding inflating deductions and fabricating a business for a prior client. Defendant was not in custody during that meeting.

On December 10, 2003, Internal Revenue Service Special Agents interviewed Defendant in conjunction with the execution of a search warrant at her business office, located at 914 E. 8th St., Suites 211 and 213, National City, California. Defendant was not under arrest nor in custody at the time of the interview. On July 3, 2007, Internal Revenue Service Special Agents again interviewed Defendant at her business office. Defendant was not under arrest nor in custody at the time of the interview. On those two occasions, the Internal Revenue Special Agents read what is called the "Non-Custody

Statement of Rights", a copy of which is attached to this Response and Opposition as Exhibit 3.  After being advised of her rights pursuant to Internal Revenue Service policy, Defendant advised the Special Agents that she understood her rights.  Defendant then elected to speak with Special Agents.  Notably, Defendant does not dispute any of these facts in her motion to suppress.

The Government intends to introduce statements Defendant made during the undercover operation, and the December 10, 2003 and July 3, 2007 interviews.  Early in discovery, the United States provided to Defendant recordings and transcripts of the undercover contacts, as well as summaries of Defendant's interviews.

## 2.   <u>Argument</u>

Defendant moves to suppress her statements and requests that the Government prove that all statements were voluntarily made after a knowing and intelligent <u>Miranda</u> waiver.  Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary.  Defendant's motion to suppress statements should be denied because Defendant was never in custody. Accordingly, the voluntary, pre-arrest statements involved in this case are admissible even absent <u>Miranda</u> warnings. On December 10, 2003, and July 3, 2007, Defendant was advised of her rights even though she was not in custody, consistent with Internal Revenue Service practice.  Defendant advised Special Agents that she understood those rights, and she agreed to speak with agents.  Defendant does not dispute any of these facts.  Therefore, Defendant is not entitled to an evidentiary hearing.  She has  failed to allege any specific factual dispute and failed to support her motion with any evidence.

### (a)   <u>Miranda warnings were not required</u>

Defendant is incorrect that the Government needs to prove compliance with <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) prior to introducing Defendant's statements.  A law enforcement officer's obligation to give a suspect <u>Miranda</u> warnings before interrogation extends only to those instances where the individual is "in custody."  <u>United States v. Kim</u>, 292 F.3d 969, 973 (9th Cir. 2002) (citing <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam)). Custody

1   means either a formal arrest, or a formal restraint on freedom of movement of the degree associated with

2   a formal arrest.  Id.  (citing Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293

3   (1994)).  It is well-established that undercover agents are not required to give suspects Miranda

4   warnings, even if the suspect is incarcerated.   Illinois v. Perkins, 496 U.S. 292, 296 (1990)

5   ("Conversations between suspects and undercover agents do not implicate the concerns underlying

6   Miranda").

7       Defendant has not alleged, nor could she, that she was in custody when she made any of the

8   statements at issue in this case.  Accordingly, defendant's motion to suppress statements should be

9   denied.

10          **(b)    An evidentiary hearing is not required**

11      This Court can and should deny Defendant's motion to suppress statements without an

12   evidentiary hearing because Defendant failed to allege a specific factual dispute.  The purpose of an

13   evidentiary hearing should be to resolve a factual dispute.

14      A defendant is entitled to an evidentiary hearing concerning voluntariness of statements only

15   when evidence is in dispute. Jackson v. Denno, 378 U.S. 368 (1964).  See United States v. Jenkins,

16   785 F.2d 1387, 1394- 1395 (9th Cir. 1986); United States v. Hart, 729 F.2d 662 (10th Cir. 1984).

17   An evidentiary hearing is not required simply because a defendant alleges a Fifth Amendment

18   violation.  Rather, the need for an evidentiary hearing, which determination is entrusted to the

19   discretion of the district court, must be based upon a prima facie showing of impropriety on the part

20   of the Government.  See Nardone v. United States, 308 U.S. 338, 342 (1939); United States v.

21   Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving

22   papers are definite, specific, detailed and nonconjectural to enable the court to conclude that

23   contested issues of [material] fact . . . are at issue").

24      The Government does not dispute that, if the issue is properly raised, it has the burden of

25   proving that Defendant's statements are admissible.  However, this burden does not excuse

26   Defendant from the requirement that she make specific allegations of illegality, produce evidence

27

28

1   and persuade the Court that statements should be suppressed.  Defendant's motion failed to

2   specifically identify the statements that she seeks to suppress or allege any specific factual or legal

3   dispute regarding the inadmissibility of the statements.  Although not constitutionally mandated,

4   Defendant was advised on December 10, 2003 and July 3, 2007 that Special Agents could not

5   compel her to answer questions, that anything she said could be used against her, and that she could

6   consult with an attorney before answering any questions.  See Ex. 3.  Defendant advised Special

7   Agents that she understood those rights and elected to speak with Special Agents.  Because

8   Defendant does not dispute any of these facts, Defendant's motion should be denied without an

9   evidentiary hearing.

10          **(c)      Defendant's motion is not supported by declaration**

11          Where a defendant decides against submitting a declaration in support of the factual

12   allegations in a motion in accordance with local rules – such as Crim. L.R. 47.1(g)(1) for this Court

13   – the Court need not grant an evidentiary hearing.  See United States v. Wardlow, 951 F.2d 1115,

14   1116 (9th Cir. 1991) (District Court did not abuse its discretion in denying evidentiary hearing

15   because defense counsel's declaration was insufficient to meet the requirements of the local rules for

16   the Central District of California which requires motions be supported by a declaration signed by an

17   individual who is competent to testify about the facts); United States v. Moran-Garcia, 783 F. Supp.

18   1266, 1268-74 (S.D. Cal. 1991) (District Court for the Southern District of California had discretion

19   to deny an evidentiary hearing when the defendant's suppression motion was not supported by a

20   declaration of an individual who had personal knowledge of the events).  Criminal Local Rule

21   47.1(g)(1) provides that all "[c]riminal motions requiring a  predicate factual finding shall be

22   supported by declaration(s)." Id. (emphasis added).

23          Here, Defendant decided against supporting his allegations with a declaration as required by

24   Crim. L.R. 47.1(g).  As such, this Court should deny Defendant's motion to suppress and find that

25   Defendant's statements are admissible.

26

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions              16                          08CR0918-L

1

**IV.**

2

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED BECAUSE
THERE WAS NO EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT**

3

**Def. Mot. pp. 14-15**

4
    Defendant moves to suppress all evidence seized in violation of the Fourth Amendment.

5
Def. Mot., at 14.  Because there is no such evidence, the motion should be denied.

6
    On December 9, 2003, United States Magistrate Judge Jan M. Adler issued a warrant to

7
search Defendant's business premises, located at 914 E. 8th St., Suites 211 and 213, National City,

8
California. The search warrant was executed on December 10, 2003.  During the execution of the

9
search warrant, Defendant advised Special Agents that there were additional business records

10
located in the garage of her daughter's residence, where Defendant was residing at the time.  Special

11
Agents obtained signed consents to seize those document from the Defendant, Defendant's husband,

12
and her daughter, Dulce Wickstrom.  See Exhibit 4, Consents to Search and Seize Records.

13
    The issuance of a search warrant by a magistrate judge is reviewed for clear error. See

14
United States v. Fulbright, 105 F.3d 443, 453 (9th Cir.1997). The determination of the validity of the

15
search warrant affidavit is whether the issuing Magistrate Judge had a "substantial basis" for

16
concluding that the affidavit in support of the warrant established probable cause. United States v.

17
Chavez-Miranda, 306 F.3d 973, 978; Fulbright, 105 F.3d at 453; United States v. Brown, 951 F.2d

18
999, 1002 (9th Cir.1991).  Investigating agents may conduct a search without a warrant or probable

19
cause based upon and individual's consent and any evidence discovered may be seized and admitted

20
at trial.  See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

21
    Defendant has failed to identify any legal or factual grounds for suppression of any evidence

22
obtained during the execution of the search warrant or consent search.  Defendant's vague and

23
conclusory challenge to "the validity of the search warrant affidavit prepared by special Agent Len

24
Bradley, the search warrant itself, and the subsequent execution of the search warrant at her home

25
and place of business," Def. Mot. at 15, provides the Court no basis upon which to find that any

26
evidence should be suppressed.  There was a validly issued search warrant of Defendant's business

27

28

and validly obtained consent to search and seize records from the garage of Defendant's daughter's residence.  Accordingly, Defendant's motion should be denied.

**V.**

**THE INDICTMENT SHOULD NOT BE DISMISSED BECAUSE THE GRAND JURY INSTRUCTIONS PROVIDED TO THE JANUARY 2007 GRAND JURY DO NOT RUN AFOUL OF CURRENT NINTH CIRCUIT LAW**
**Def. Mot.  pp. 15-31**

### 1.    Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. Def. Mot. pp.15-31. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found these two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making her arguments concerning the grand jury instructions Defendant appears to base her contentions on the Constitution as a reason to dismiss the indictment.  Concerning that kind of a contention, the Ninth Circuit has stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant."  Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992)(citation omitted). [1]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that

---

[1]    In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on United States v. Williams, 504 U.S. 36, 50 (1992)).

is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.  If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[2/]  408 F.3d at 1203 (Footnote omitted).  "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law;  it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'"  Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction the court stated:

We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.   The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . .   The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207.  "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily

---

[2/]     The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it.  "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is no post hoc remedy for that;  the grand jury's motives are not open to examination."  408 F.3d at 1204 (Emphasis in original.)

1   afford each other." Id.

2   **2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

3   Concerning whether the new grand jurors should concern themselves with the wisdom of the

4   criminal laws enacted by Congress, Judge Burns' full instruction stated:

5       You understood from the questions and answers that a couple of people were
6       excused, I think three in this case, because they could not adhere to the principle that
        I'm about to tell you.

7           But it's not for you to judge the wisdom of the criminal laws enacted by
        congress; that is, whether or not there should be a federal law or should not be a
8       federal law designating certain activity is criminal is not up to you. That's a
        judgment that congress makes.

9           And if you disagree with the judgment made by congress, then your option is
10      not to say "Well I'm going to vote against indicting even though I think that the
        evidence is sufficient" or "I'm going to vote in favor of even though the evidence
11      may be insufficient." Instead, your obligation is to contact your congressman or
        advocate for a change in the laws, but not to bring your personal definition of what
12      the law ought to be and try to impose that through applying it in a grand jury setting.

13  See Def. Mot, Ex. A, Partial Transcript (hereinafter "Partial Transcript") pp. 8-9.[3/]

14  Defendant acknowledges that in line with Navarro-Vargas, 'Judge Burns instructed the grand

15  jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by

16  Congress; that is, whether or not there should be a federal law or should not be a federal law

17  designating certain activity [as] criminal is not up to you.'" Def. Mot., p. 16. Defendant notes,

18  however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should

19  "you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going

20  to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in

21  favor of even though the evidence maybe insufficient.'" Id. Defendant contends that this addition to

22  the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors

23  disagree with a proposed prosecution." Id. Defendant further contends that the flat prohibition was

24  preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection

25

26          [3/]    The transcript attached to Defendant's motion as Exhibit B recounts the excusing of the
27  three individuals.

28

1  process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the

2  grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused

3  from service as a grand juror." Id.

4      In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

5  instruction renders irrelevant the debate about what the word "should" means. Def. Mot. pp. 22-29.

6  Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they

7  disagree with a proposed prosecution." Id. at 23. This argument mixes-up two of the holdings in

8  Navarro-Vargas in the hope they will blend into one. They do not.

9      Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom

10  of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted

11  by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an

12  expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in

13  grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his

14  rights, and within the law, when he excused the three prospective grand jurors because of their

15  expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind

16  the impaneled grand jurors that they could not question the wisdom of the laws. As we will

17  establish this reminder did not pressure the grand jurors to give up their discretion not to return an

18  indictment. Judge Burns' words cannot be parsed to say that they flatly bars the grand jury from

19  declining to indict because the grand jurors disagree with a proposed prosecution because they do

20  not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the

21  prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the

22  term "should" was germane.[4] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").

23

24      [4]    That instruction read as follows:

25          [Y]our task is to determine whether the government's evidence as presented to
     you is sufficient to cause you to conclude that there is probable cause to believe that the
26      accused is guilty of the offense charged.   To put it another way, you should vote to
     indict where the evidence presented to you is sufficiently strong to warrant a reasonable

27                                                              (continued...)

28  Government's Omnibus Response and
     Opposition to Defendant's Motions            21                        08CR0918-L

That other instruction bestows discretion on the grand jury not to indict.[5/]  In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that an whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused

---

[4/](...continued)
person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[5/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence.   The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.   As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.2002) (Per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

1    is probably guilty of the offense which is proposed.

2    Partial Transcript p. 23.

3    While the new grand jurors were told by Judge Burns that they could not question the

4    wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the

5    discretion not to return an indictment per <u>Navarro-Vargas</u>.  Further, if a potential grand juror could

6    not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

7    dismissed as a potential jury nullification advocate.  <u>See</u>  <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-

8    80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this indictment or any other

9    indictment by this Court exercising its supervisory powers.

10    Further, a reading of the dialogues between Judge Burns and the three excused jurors found

11    in the Supplemental Transcript excerpts (<u>See</u> Ex. B to Def. Mot.) reflects a measured, thoughtful,

12    almost mutual decision, that those three individuals should not serve on the grand jury because of

13    their views.  Judge Burns' reference back to those three colloquies cannot be construed as pressuring

14    the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

15    Finally, even if there was an error, Defendant has not demonstrated she was actually

16    prejudiced thereby, a burden she has to bear. "Absent such prejudice-that is, absent  'grave' doubt

17    that the decision to indict was free from the substantial influence of [the misconduct]'-a dismissal is

18    not warranted."  <u>Isgro</u>, 974 F.2d at 1094.

19    **3.    The Addition to the "United States Attorney and his Assistant United**
       **States Attorneys" Instruction Did Not Violate the Constitution**

20
21    Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

      U.S. Attorneys, Judge Burns variously stated:
22
23    [T]here's a close association between the grand jury and the U.S. Attorney's Office.
      . . .
24    You'll work closely with the U.S. Attorney's Office in your investigation of cases.

25    Partial Transcript p. 11

26    [I]n my experience here in the over 20 years in this court, that kind of tension does
      not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand
27    juries.  They generally work together.

28

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[6/]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Def. Mot. p.19-20. Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and ... they'll act in good faith in all matters presented to you.'" Id. at 20 n.5. From this lash-up Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would

---

[6/]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

proceed along these lines:

> (1) I have to consider evidence that undercuts probable cause.

> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Def. Mot. 30-31  (Emphasis added.)[7/]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[8/] (Emphasis added)). See also,

---

[7/]    The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

[8/]    Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (Citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority
(continued...)

1  United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the

2  government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

3  prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing

4  Williams)) (Emphasis added).

5      However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns

6  was a member of the United States Attorney's Office, and made appearances in front of the federal

7  grand jury.[9/]  As such he was undoubtedly aware of the provisions in the United States Attorneys'

8  Manual ("USAM").[10/]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which

9  reads:

10         In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held
   that the Federal courts' supervisory powers over the grand jury did not include the
11   power to make a rule allowing the dismissal of an otherwise valid indictment where
   the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It
12   is the policy of the Department of Justice, however, that when a prosecutor
   conducting a grand jury inquiry is personally aware of substantial evidence that
13   directly negates the guilt of a subject of the investigation, the prosecutor must present
   or otherwise disclose such evidence to the grand jury before seeking an indictment
14   against such a person. While a failure to follow the Department's policy should not
   result in dismissal of an indictment, appellate courts may refer violations of the
15   policy to the Office of Professional Responsibility for review.

16  (Emphasis added.)[11/]  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure

17  of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or

18  _____

19  [8/](...continued)
   over their own proceedings." 504 U.S. at 55.  See also, United States v. Haynes, 216 F.3d 789, 797-98
20  (9th Cir. 2000).  However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers
   would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms.
21  974 F.2d at 1096.

22     [9/]     He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12,
   14-16, 17-18.]
23
   [10/]     The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/
24  usam/index.html

25     [11/]     See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm
   Even if Judge Burns did not know of this provision in the USAM while he was a member of the United
26  States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge
   overseeing the grand jury he certainly could determine the required duties of the United States Attorneys
27  appearing before the grand jury from that source.

28

supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ."  (Emphasis added.)[12]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[13]  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by

---

[12]    See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".  See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm

[13]    Recall Judge Burns also told the grand jurors that:

[T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

1   the defendant.[14/]  There is nothing wrong in this scenario with a grand juror inferring from this state-

2   of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence

3   were presented, the evidence presented represents the universe of all available exculpatory evidence.

4   　　　　Further, just as the instruction language regarding the United States Attorney attacked in

5   Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

6   408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

7   concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and

8   does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992) the Ninth

9   Circuit while reviewing Williams established that there is nothing in the Constitution which requires

10  a prosecutor to give the person under investigation the right to present anything to the grand jury

11  (including his or her testimony or other exculpatory evidence), and the absence of that information

12  does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea

13  that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM

14  imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand

15  jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits

16  from the self-imposed policy.[15/]  Therefore, while the "duty-bound" statement was an interesting

17  tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and

18  responsibilities, and does not cast an unconstitutional pall upon the instructions which requires

19  dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by

20  Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by

21  Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").

22  _____

23  　　　[14/]　　Realistically, given "that the grand jury sits not to determine guilt or innocence, but to
    assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause],"
24  Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent
    defense attorney is going to preview the defendant's defense story prior to trial assuming one will be
25  presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few and far between.

26  　　　[15/]　　The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
    failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her
27  job with the United States Attorney's Office for such a failure per the USAM.

28  Government's Omnibus Response and
    Opposition to Defendant's Motions　　　　　　28　　　　　　　　　　08CR0918-L

1  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the

2  accused and is independent," which was also required by <u>Navarro-Vargas</u>. 408 F.3d at 1207. In

3  this context the unnecessary "duty-bound" statement does not mean the instructions were

4  constitutionally defective requiring dismissal of this indictment or any indictment.

5      The "duty bound" statement constitutional contentions raised by Defendant do not indicate

6  that the "'structural protections of the grand jury have been so compromised as to render the

7  proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

8  "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

9  pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

10  grand jury is substantially infringed." <u>Isgro</u>, 974 F.2d at 1094 (Citation omitted). Therefore, this

11  indictment, or any other indictment, need not be dismissed.

12      Additionally, on October 11, 2007, Judge Moskowitz recently denied a similar motion

13  presented to him in <u>United States v. Manuel Martinez-Covarrubias</u>, Case 07-CR-491 BTM. And on

14  December 5, 2007, Judge Houston denied a similar motion presented to him in <u>United States v.</u>

15  <u>Diana Jimenez-Bermudez</u>, Case 07-1372 JAH. The United States agrees with a substantial portion

16  of the Judge Moskowitz decision, and agrees with the Judge Houston decision. While not

17  authorities for this Court, the United States believes the reasoning, especially of the Judge Houston

18  decision, are persuasive and attaches both orders as Exhibits 5 and 6 for the Court's perusal.

19      For all of the above-stated reasons, Defendant's motion to dismiss based upon improper

20  grand jury instructions should be denied.

1

2
3

**VI.**

**THE COURT SHOULD DENY DEFENDANT'S MOTION
TO DISMISS DUE TO UNDUE DELAY**
**Def. Mot. pp. 31-33**

4    Defendant alleges that the charges pursuant to 26 U.S.C. §§ 7206(1) and (2) with respect to

5    tax years 2001 and 2002 should be dismissed because alleged pre-Indictment delay violated her

6    Fifth Amendment Due Process rights and that the delay prejudiced her.  Def. Mot. at 31-33.

7    Defendant's claims of prejudice are meritless and the motion to dismiss should be denied.

8    The Ninth Circuit has stated, "An indictment is rarely dismissed because delay by the

9    prosecution rises to the level of a Fifth Amendment due process violation."  United States v. Barken,

10   412 F.3d 1131, 1134 (9th Cir. 2005).  In Barken, the court explained the well-established two-part

11   test used to determine whether a defendant's due process rights have been violated.  Id. First, a

12   defendant must show that he suffered "actual, non-speculative prejudice from the delay," a burden

13   that is "heavy" and "rarely met."  Id.  If, and only if, the defendant has demonstrated prejudice, the

14   defendant must show that the delay "offends those fundamental conceptions of justice which lie at

15   the base of our civil and political institutions."  Id. (quoting United States v. Doe, 149 F.3d 945, 948

16   (9th Cir. 1998)).  After finding that the defendant's arguments about prejudice did not go beyond

17   speculation, the court affirmed the district court's denial of Defendant's motion without reaching the

18   question of the reasons for the delay by the Government.  Id. at 1135-36.

19   First, in the present case there has been no delay.  The Indictment in this case alleges

20   offenses that constitute a pattern of violations of the criminal tax laws encompassing tax years 2001

21   through 2006, the last of which occurred on April 16, 2007.  See Indictment, Count 30.  That count

22   and all of the other counts alleged in the Indictment are properly joined with the offenses alleged

23   regarding tax years 2001 and 2002.  See Fed. R. Crim. P. 8(a).  Therefore, Defendant's allegation

24   that the Indictment should have been returned in 2005, see Def. Mot. at 32, is untenable.

25   Second, as the Ninth Circuit has noted, "case law holds that the statute of limitations is

26   typically adequate protection for a defendant's rights."  Barken, 412 F.3d at 1135.  The Supreme

27

28

Court has explained the role of the Constitutional claims in relation to the statute of limitations: "There is thus no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." United States v. Marion, 404 U.S. 307, 323 (1971); see also United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir. 1992) (stating that "protection from lost testimony, as well as other evidence, generally falls solely within the ambit of the statute of limitations.") (internal quotation and citation omitted). The six-year statute of limitations found in 26 U.S.C. § 6531(3) and (5) applies to all of the offenses alleged and protects Defendant from a stale prosecution. See United States v. Doe, 149 F.3d 945, 948 (9th Cir. 1998). Because all of the charges have been instituted within the applicable statute of limitations, the Court should deny Defendant's motion on this ground alone.

Third, Defendant's claims of prejudice are insufficient to carry her heavy burden. Actual prejudice "entails proof by definite and non-speculative evidence that loss of [evidence] has meaningfully impaired the defendant's ability to defend [her]self." United States v. Mills, 280 F.3d 915, 920 (9th Cir. 2002). Defendant alleges "years of anxieties," loss of "records and some memories . . . because families who closed the office [sic] inefficient and irresponsible" and loss of a "star witness," Dominga Harlow, who is now deceased. Def. Mot., at 32. Defendant also argues that the public was prejudiced because the Government did not stop her illegal and fraudulent conduct by filing a civil injunction. Finally, Defendant claims that the Government gained a tactical advantage, but fails to explain what the purported advantage is or how that affects her ability to defend the charges in this case.

Defendant has provided no proof or anything beyond vague, speculative, and unsubstantiated complaints and has not shown that anything has meaningfully impaired her ability to defend against the charges. Defendant has not identified any documentary evidence or oral testimony that has been lost or how such evidence, if any exists, affects her ability to defend this case.

With respect to Defendant's former employee, Dominga Harlow, Defendant has not shown

how Ms. Harlow's death has affected her ability to defend the charges.  A bare allegation of the existence of a missing witness falls far short of establishing actual prejudice.  United States v. Mays, 549 F.2d 670, 677 (9th Cir.1977). The defendant must also show that the missing evidence is not available from other sources. United States v. Horowitz, 756 F.2d 1400, 1405 (9th Cir. 1985).  The only allegation Defendant makes is that Ms. Harlow used to work for her.  There is no basis in Defendant's motion upon which to conclude that any testimony Ms. Harlow may offer could not be secured from another witness.

Defendant's arguments are foreclosed by the Ninth Circuit's reasoning in Arnold v. McCarthy, 566 F.2d 1377, 1383 n.1 (9th Cir. 1978):

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost.  In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

This Court need not reach the second prong of the balancing test, which requires the Defendant to show that the reasons for the delay offend "fundamental conceptions of justice which lie at the base of our civil and political institutions."  Barken, 412 F.3d at 1134.  As noted above, there has been no delay in alleging the properly joined pattern of offenses against Defendant. Defendant appears to be asserting a non-existent right to be prosecuted in increments.  Because such a right does not exist, the instant prosecution necessarily cannot offend any fundamental conception of justice.  Accordingly, Defendant's motion should be denied.

## VII.

## DEFENDANT HAS NOT BEEN SELECTIVELY PROSECUTED
### Def. Mot. p 33.

Defendant's motion to dismiss for selective prosecution is meritless.  According to Defendant, "[o]ther tax preparers who had similar or the same charges (§7206(2)) were only barred from preparing tax returns and the DOJ just filed a civil injunction/case." Def. Mot. at 33.

1    Defendant is factually incorrect.  Although the individual identified in defendant's motion,

2    Roosevelt Kyle, was not criminally prosecuted for preparing false tax returns, he was criminally

3    prosecuted, convicted and sentenced to one year of imprisonment.  Furthermore, tax return preparers

4    have been criminally prosecuted in the Southern District of California for preparing false and

5    fraudulent federal income tax returns, including Susan O'Brien, Jeffrey Barber, Kathy Hill and

6    Violet Negrete-Jauregui.  United States v. O'Brien et al, 03cr1110-L.

7            To make out a prima facie claim for selective prosecution, the defense must make "a credible

8    showing of different treatment of similarly situated persons."  United States v. Armstrong, 517 U.S.

9    456, 470 (1996); see also id. at 468 (noting that the "rigorous standard for the elements of a

10   selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of

11   such a claim").   Defendant must also show that the prosecution is based upon an impermissible

12   motive.  United States v. Bourgeois, 964 F.2d 935, 941 (9th Cir. 1992). "Mere allegations" are

13   simply not enough. Id.  Defendant's citation to one case in this district – a case in which the

14   individual was not criminally prosecuted for preparing fraudulent tax returns but was prosecuted for

15   willfully failing to file his own tax returns – does not come remotely close to satisfying the "rigorous

16   standard" set out in Armstrong.  The Supreme Court, the Ninth Circuit, and other federal courts have

17   repeatedly rejected showings far more credible that the paltry one put forth in this case.  See, e.g.,

18   Armstrong, 517 U.S. at 470 (holding that statistical study and affidavits did not make out colorable

19   selective prosecution claim); United States v. Arenas-Ortiz, 339 F.3d 1066, 1069-70 (9th Cir. 2003)

20   (rejecting extensive statistical analysis as insufficient under Armstrong); In re United States, 397

21   F.3d 274, 284-85 (5th Cir. 2005) (granting mandamus review and reversing district court's

22   discovery order in a death penalty case because defendant's study was insufficient – "[a] much

23   stronger showing, and more deliberative analysis, is required before a judge may permit open-ended

24   discovery into a matter that goes to the core of a prosecutor's function and implicates serious

25   separation of powers concerns.").  Moreover, Defendant has not made any showing that her

26   prosecution is based upon an impermissible motive.  Accordingly, the Court should deny

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions          33                          08CR0918-L

1    Defendant's motion to dismiss the indictment for selective prosecution.

2    ## VIII.

3    ### NO BASIS TO DISMISS INDICTMENT DUE TO GRAND JURY BEING MISLED
     ### Def. Mot. pp. 33-34

4

5    Defendant is simply wrong in her assertion that "[t]he grand jury indictment was totally

6    misleading to the grand jury." Def. Mot. at 33. Defendant fails to articulate how the circumstances

7    she alleges, without any factual foundation, could have been misleading nor how these

8    circumstances, even if true, warrant dismissal of the indictment. A district court may not dismiss an

9    indictment for error in a grand jury proceeding unless the error prejudiced the defendant. United

10   States v. Smith, 424 F.3d 992, 1003 (9th Cir. 2005), citing Bank of Nova Scotia v. United States,

11   487 U.S. 250, 254 (1988). Substantial proof of grand jury bias is required to overturn an indictment.

12   United States v. Al Mudarris, 695 F.2d 1182, 1186 (9th Cir. 1983).

13   One basis that may justify dismissal of an indictment is the presentation of perjury to the

14   grand jury. To warrant dismissal of the indictment, Defendant must show that (a) "the prosecutor

15   obtained an indictment by knowingly submitted perjured testimony to the grand jury," and that (b)

16   such perjurious testimony was material. United States v. Claiborne, 765 F.2d 784, 791 (9th Cir.

17   1985) (abrogated on other grounds). "[I]f sufficient non-perjurious testimony exists to support the

18   indictment, the courts will not dismiss the indictment due to the presence of perjurious evidence."

19   Id. at 791. Defendant has not even attempted, much less satisfied, either of these onerous criteria.

20   Defendant does not allege that perjury was presented to the grand jury, nor was any

21   presented. Neither does defendant allege that the grand jury was biased. Instead, defendant

22   complains that the prosecution failed to inform the grand jury regarding the following: (1) the

23   official investigation began in January 2003; (2) defendant's criminal behavior was known to the

24   government in March 2002; (3) defendant continued preparing tax returns until March 28, 2008; (4)

25   the government took no civil action to protect the public from defendant's criminal conduct; (5) "the

26   amount of additional suspected underestimated income is very little, compared to the government

27

28

1  expenses on the prosecution; arrest; trial and incarceration; lawyers' fees; and especially the

2  Honorable Judge's time." Def. Mot. at 34. None of the defendant's assertions warrants the

3  dismissal of the indictment. Ninth Circuit law requires this Court to deny defendant's motion. See,

4  e.g., United States v. Brown, 347 F.3d 1095, 1098 (9th Cir. 2003) (rejecting grand jury abuse

5  argument because even if the questioned "portion of the testimony is excised, [the witness's]

6  remaining truthful testimony provided probable cause to support the indictment."); United States v.

7  Mohawk, 20 F.3d 1480, 1483 n.2 (9th Cir. 1994) (rejecting grand jury abuse claim because

8  sufficient other evidence presented to the grand jury "to establish the requisite probable cause to

9  support the indictment"); United States v. Spillone, 879 F.2d 514, 524 (9th Cir. 1989) (rejecting

10  grand jury abuse claim because erroneous testimony "was not sufficiently material to justify holding

11  that it substantially influenced the grand jury's decision to indict").

12                                          **IX.**

13                    **THERE WAS NO PROSECUTORIAL MISCONDUCT**
                                  **Def. Mot. p. 34**

14

15          Defendant alleges that "[t]he government used a magnitude of manipulation as the

16  prosecutors used lies and exaggeration to intimidate the Honorable Magistrate Anthony J. Battaglia

17  . . . they [the government's lies and exaggeration] scared [defendant's] family members and they

18  tried not to be qualified on the bond application." Def. Mot. at 34. Nowhere does defendant

19  identify the "lies" or "exaggeration[s]" made by the Government, for the simple reason that there

20  were no lies or exaggerations.

21          Dismissal of an indictment for prosecutorial misconduct under the court's supervisory powers

22  requires both that the misconduct "(1) be flagrant and (2) cause 'substantial prejudice' to the

23  defendant." United States v. Ross, 372 F.3d 1097, 1110 (9th Cir. 2004). Where, as here, there is no

24  misconduct and defendant's motion is unsupported by fact or law, defendant's motion to dismiss for

25  prosecutorial misconduct should be denied.

26

27

28  Government's Omnibus Response and
    Opposition to Defendant's Motions                35                        08CR0918-L

1

**X.**

2

**GOVERNMENT NEED NOT DISCLOSE INFORMANT'S
IDENTITY IT DOES NOT KNOW**
**Def. Mot. pp. 34-35**

3

4          Citing <u>United States v. Rovario</u>, 353 U.S. 53 (1957), Defendant moves the Court to order the

5    government to "reveal the identify of the tax preparer informant referred to in Special Agent

6    Bradley's search warrant affidavit." Def. Mot., at 34.  Defendant offers no basis for the request,

7    other than speculation that disclosure may be helpful to the defense.  As indicated in the search

8    warrant affidavit to which the defendant refers, the government does not know the identity of the

9    "anonymous informant."  <u>See</u> Ex. 7, Excerpt from Search Warrant Affidavit; <u>see also</u> <u>supra</u> p. 12:15-

10   22 & Ex. 2.

11          While a defendant has a right to learn the identify of confidential informants where the

12   defendant shows such information is "relevant and helpful to the defense of an accused or is

13   essential to a fair determination of the cause" (<u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501,

14   1505 (9th Cir. 1997), where there is no indication that the anonymous informant could or would

15   furnish evidence helpful to the defense, defendant's motion is properly denied.  <u>See</u> <u>United States v.</u>

16   <u>Ruiz-Juarez</u>, 456 F.2d 1015, 1016 (9th Cir. 1972); <u>United States v. Kelly</u>, 449 F.2d 329, 330 (9th

17   Cir. 1971).  Defendant has made no showing that disclosure would be helpful, nor does the

18   government know the informant's identity.  Therefore defendant's motion should be denied.

19

**XI.**

20

**DEFENDANT'S MOTION FOR EARLY PRODUCTION OF
WITNESS AND EXHIBIT LISTS IS UNWARRANTED**
**Def. Mot. p.35**

21

22          Citing <u>United States v. W.R. Grace</u>, 526 F.3d 499 (9th Cir. 2008), "defendant requests that

23   the government produce exhibit and witness lists as soon as possible to assist her in preparing for

24   trial." Def. Mot. at  35.  The government objects.

25          In <u>W.R. Grace</u>, the district court, recognizing the magnitude of an eight defendant case with

26   a thirty-year relevant time period and more than one thousand victims, held a pretrial case

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions                    36                              08CR0918-L

1 management conference in March of 2005, following which it issued a case management order

2 memorializing the conference's results.  As part of the case management order issued in March of

3 2005 the district court required the government to disclose finalized witness and exhibit lists by

4 September 30, 2005; the government did not object.  Id. at 503.

5       The W.R. Grace district court had good reasons to impose an early deadline.  The district

6 court believed that the deadline would bring focus and organization to a complicated conspiracy

7 case stretching back thirty years, consisting of more than 200 government witnesses and with

8 millions of pages of documents produced in discovery.  As the appellate court noted in affirming the

9 district court's authority to issue the order, "[s]uch a complex case poses special challenges to the

10 parties in preparing for trial and to the court in managing the litigation.  . . . Given the many

11 discussions the court had with counsel about the fluid nature of the government's evolving case and

12 the court's expressed concerns that the government seemed unable to get its trial preparation under

13 control, it could hardly have been a surprise that the court froze the witness list when and as it did."

14 Id. at 513-14.

15       Defendant cites no basis for her request other than such disclosure would "assist her in

16 preparing for trial."  Def. Mot. at 35.  It is uncontroverted that "a district court has the authority to

17 enter pretrial case management and discovery orders designed to ensure that the relevant issues to be

18 tried are identified, that the parties have an opportunity to engage in appropriate discovery and that

19 the parties are adequately and timely prepared so that the trial can proceed efficiently and

20 intelligibly."  W.R. Grace, 526 F.3d at 508-09.  Thus, a district court "may in appropriate

21 circumstances require the government to disclose a final list of its proposed trial witnesses . . .."  Id.

22 at 513.

23       There are no circumstances present in this case meriting such disclosure.  There is a single

24 defendant, the issues are well-defined, and discovery has been timely made to the defendant

25 including the early disclosure of grand jury testimony and memoranda of interview of prospective

26 witnesses.  Thus, the government requests the court deny defendant's motion.

27

28 Government's Omnibus Response and
Opposition to Defendant's Motions

08CR0918-L

1

## CONCLUSION

2        For the reasons stated, the Court should deny the Defendant's motions.

3

4    DATED: August 18, 2008

5

6                                          /s/ Christopher S. Strauss
                                          Christopher S. Strauss
7                                          Special Assistant United States Attorney
                                          Attorney for Plaintiff
8                                          United States of America
                                          Email: Christopher.S.Strauss@usdoj.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Government's Omnibus Response and
     Opposition to Defendant's Motions              38                              08CR0918-L

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0918-L |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| FE S. GARRETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Christopher S. Strauss, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.

I have caused service of GOVERNMENT'S OMNIBUS RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS on defendant FE S. GARRETT, pro se, by sending a copy of the motion via Federal Express on August 18, 2008 to defendant at the following address:

The Geo Group
Reg. # 0799-0298
Western Region Detention Facility
220 West C Street
San Diego, CA 92101

//

Government's Omnibus Response and
Opposition to Defendant's Motions                                08CR0918-L

1    I have caused service of GOVERNMENT'S OMNIBUS RESPONSE AND OPPOSITION TO

2  DEFENDANT'S MOTIONS  on defendant's standby counsel by electronically filing the foregoing with

3  the Clerk of the District Court using its ECF System, which electronically notifies them:

4

5  Erica Kristine Zunkel                                    Erica_zunkel@fd.org
   Federal Defenders of San Diego
6  225 Broadway, Suite 900
   San Diego, CA 92101
7
        I declare under penalty of perjury that the foregoing is true and correct.
8
        Executed on August 18, 2008
9

10
                                           /s/ Christopher S. Strauss
11                                         CHRISTOPHER S. STRAUSS
                                           Special Assistant United States Attorney
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  Government's Omnibus Response and
    Opposition to Defendant's Motions                                    08CR0918-L