KAREN P. HEWITT
United States Attorney
CHRISTOPHER S. STRAUSS
ELIZABETH C. HADDEN
Special Assistant U.S. Attorneys
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 557-7845
(202) 514-5762

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>FE S. GARRETT<br>Defendant. | Criminal Case No. 08CR0918-L<br><br>GOVERNMENT'S OMNIBUS RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE TO:<br><br>(1) PRECLUDE 404((b) EVIDENCE;<br>(2) ALLOW THE DEFENDANT TO VOIR DIRE THE JURY; AND<br>(3) PRECLUDE ANY STATEMENTS MADE BY THE DEFENDANT'S HUSBAND, GREGORY GARRETT, SR.<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES. |

Plaintiff, United States of America, by and through its counsel Karen P. Hewitt, United States Attorney, and Christopher S. Strauss and Elizabeth C. Hadden, Special Assistant United States Attorneys, hereby submits the following Response and Opposition to Defendant's Motions in Limine. In support of this Response and Opposition, the United States avers the following:

# I

# STATEMENT OF THE CASE

The United States incorporates by reference its Statement of Facts contained in its Motion to Admit Statements (Rec. Doc. No. 43 at 2-12) and its Omnibus Response and Opposition to Defendant's Motions. (Rec. Doc. No. 45, at 2).

# II

# DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TO PRECLUDE 404(b) EVIDENCE Def. Mot. pp. 2-3

## A. The Evidence the Government Intends to Introduce is Inextricably Intertwined with the Charged Counts and Not Subject to Rule 404(b)

### 1. The Evidence

On August 7, 2008, the Government gave the Defendant notice of its intent to introduce the following evidence:

(a) Evidence regarding the Defendant's preparation of federal individual income tax returns for the following taxpayers for the following years which contain false deductions:

a. 2000 Form 1040 for H.D and M.D.;

b. 2000 Form 1040 for P.A.;

c. 2000 Form 1040 for E.A and M.D.;

d. 2000 Form 1040 for V.D and Z.D;

e. 2000 Form 1040 for J.D.C. and R.C;

f. 2000 Form 1040 for V.H and J.H.; and

g. 2000 Form 1040 for L.F.;

(b) Evidence regarding the Defendant's preparation of federal tax returns for the following taxpayers for the following years:

a. 2003 Form 1040 for J.D.C. and R.C.;

b. 2003 Form 1040 for T.M. and M.M.;

(c) Evidence regarding the Defendant's preparation of a false 2002 Form 1040 federal income tax return for "Ceclia Marie Vicente", who was in fact undercover Internal Revenue Service Special Agent Ceclia Braga. That evidence includes all of the statements made to the undercover Internal Revenue Special Agent on April 2, 2003, regarding past conduct, including the Defendant's admissions of fabricating deductions on clients' prior federal income tax returns and fabricating a business on a prior client's federal income tax return;

(d) All the statements of Gregory Garrett, Sr., Defendant's agent, unpaid employee and co-conspirator, which were made to the undercover Internal Revenue Service Special Agent on August 6, 2003. Those statements include admissions that it was the Defendant's practice to fabricate Schedule A and Child Care Expense deductions in order to reduce the clients' tax liability; and

(e) Defendant's admissions made to Internal Revenue Service Special Agents on December 10, 2003, and July 3, 2007 regarding placing inflated deductions on unspecified clients' federal income tax returns.

The Government notified the Defendant that it did not believe any of this evidence was subject to Fed. R. Evid. 404(b). However, in an abundance of caution, the United States nonetheless notified Defendant of its intent to introduce this evidence.

**2. Law and Argument**

Federal Rule of Evidence 404(b) governs when a party seeks to introduce evidence concerning "other crimes, wrongs, and acts" of a defendant. See Fed. R. Evid. 404(b). However, "[e]vidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense." United States v. Beckman, 298 F.3d 788, 793-94 (9th Cir. 2002) (citing United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995)); United States v. Sayakhom, 186 F.3d 928, 937-38 (9th Cir. 1999); United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987). Evidence is "inextricably intertwined" if it is part of a larger criminal scheme or the

evidence is necessary to allow a prosecutor to provide a "coherent and comprehensible story" concerning the crime charged. See Beckman, 298 F.3d at 794; United States v. Williams, 291 F.3d 1180, 1189-90 (9th Cir. 2002) (overruled on other grounds by United States v. Gonzales, 506 F.3d 940 (9th Cir. 2007)) (uncharged transactions admissible because "uncharged conduct . . . inextricable from and provided necessary context for . . . testimony about the charged conduct"); United States v. Kallin, 50 F.3d 689, 696 (9th Cir. 1995); United States v. Mundi, 892 F.2d 817, 820 (9th Cir. 1989) (same).    The Ninth Circuit has repeatedly held that evidence is not subject to a 404(b) analysis if it is "inextricably intertwined in a larger criminal scheme." Kallin, 50 F.3d at 696; see also Soliman, 813 F.2d at 279. In Kallin, a defendant was charged with tax evasion and subscribing to false tax returns. 50 F.3d at 691. The defendant argued that the district court had improperly admitted into evidence copies of corporate tax returns on which he had under reported his taxes for years he had not been indicted. Id. at 695-96. The Ninth Circuit held that the returns were properly admitted, reasoning they were part of a "larger scheme" to evade his personal income taxes, for which he had been indicted. Id. at 696. See also United States v. Whatley, 2000 WL 760042, *2 (9th Cir. June 12, 2000) (unpublished)( holding that a witness's testimony about how she and her husband had been defrauded by the defendant was properly admitted where the defendant was charged with mail fraud and interstate transportation of stolen goods because it was part of the defendant's "unified scheme to defraud").

  In Soliman, defendant was charged with two counts of receiving stolen property and three counts of mail fraud. At trial, the government presented a summary chart describing one hundred two fraudulent insurance claims submitted by defendant's subordinate. The defendant objected that the chart was improper "other crimes" evidence under Rule 404(b) and also urged that if the trial court were to admit the chart, a limiting instruction be given, stating that the chart was evidence of intent and knowledge only and not of guilt. The trial court admitted the chart as direct, relevant evidence and refused to give the limiting instruction. 813 F.2d at 278.

  The Ninth Circuit upheld the admissibility of the chart as direct evidence not requiring a

limiting instruction: "The policies underlying [Rule 404(b)] are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." 813 F.2d at 279 (citing and quoting United States v. Aleman 592 F.2d 881, 885 (5th Cir. 1979)). Accord United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992) (evidence that defendant charged with alien smuggling had been previously observed at residence transporting illegal aliens in company of person later arrested held admissible; "the evidence is 'direct evidence,' used to flesh out the circumstances surrounding the crime with which defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context"); Mundi, 892 F.2d at 817 (defendant charged with wire fraud involving one travel agency only; evidence pertaining to other travel agencies not named in indictment properly admitted over defendant's objection that it was "other crimes" evidence because such evidence was "inextricably intertwined" with conduct charged in indictment).

**(a) 2000 Tax Returns of Testifying Witnesses**

Defendant erroneously asserts that the Government intends to introduce evidence of prior tax returns prepared by Defendant for “other people.” Def. Memorandum, at 1. To the contrary, the Government intends to introduce testimony and false 2000 tax returns prepared by Defendant for taxpayer-witnesses who will be testifying regarding the offenses charged in Counts 3-5, 7-14, and 18-19 of the Superseding Indictment. Witness testimony and the tax returns will establish that Defendant’s preparation of these false tax returns are part of the same scheme that form the basis of the offenses charged in the Superseding Indictment. Defendant inflated, falsified, and/or fabricated the same Schedule A Itemized Deductions on the 2000 tax returns she prepared for clients as she did for the 2001 and 2002 tax returns prepared for those same clients. Although the violations of 26 U.S.C. § 7206(2) alleged in the Superseding Indictment revolve around tax years 2001 and 2002, Defendant’s preparation of similarly false tax returns for the same clients in the immediately preceding year is unquestionably part of a “larger criminal scheme” to prepare false and fraudulent tax returns. See Kallin, 50 F.3d at 699.

The evidence is also necessary to present a coherent and comprehensible story regarding the commission of the § 7206(2) crimes charged. Defendant's professional relationship with the taxpayer-witnesses pre-dated the charged offenses. The absence of evidence regarding Defendant's identical fraudulent preparation of the 2000 tax returns will leave the jury with the mistaken impression that Defendant prepared accurate and truthful tax returns for those clients in prior years. Therefore, the evidence of Defendant's conduct with respect to the preparation of the false 2000 tax returns is necessary to present a coherent narrative to the jury and is "intextricably intertwined" with the witnesses testimony regarding the preparation of their 2001 and 2002 tax returns.

**(b) 2003 Tax Returns of Testifying Witnesses**

The Government also intends to introduce testimony and the 2003 tax returns of two taxpayer witnesses that were prepared by the Defendant. However, the Government is not offering this evidence to show that the 2003 tax returns were false or that Defendant's preparation of those tax returns was part of Defendant's larger criminal scheme. Instead, Defendant's preparation of those tax returns and the tax returns themselves, which contain strikingly lower amounts of deductions, are direct evidence of the falsity of the 2001 and 2002 tax returns Defendant prepared for those clients.

The 2001 and 2002 tax returns Defendant prepared in 2002 and early 2003 for J.D.C. and R.C. claimed $12,200 and $10,891 in charitable contributions, respectively; the amounts claimed for job expense deductions was $5,711 and $4,596, respectively. A search warrant was executed on December 10, 2003 at Defendant's business. In conjunction with that search warrant, Defendant was interviewed and advised that the Internal Revenue Service was questioning charitable contributions and employee business expenses on her clients' tax returns. The 2003 tax return prepared for J.D.C. and R.C. in February, 2004, two months after the execution of the search warrant, show charitable contributions of $700 and $0 employee business expenses. A comparison of the 2002 and 2003 tax returns for T.M. and M.M shows a similar change in pattern.

This evidence is not "other act" evidence at all within the meaning of Rule 404(b). The

Government is not offering this evidence to show similar conduct to prove that Defendant had a similar state of mind, similar knowledge, or that it was part of a common plan. See Fed. R. Evid. 404(b). To the contrary, the testimony of the witnesses regarding the 2003 tax returns will establish that the Defendant correctly prepared those returns based upon the information given to her. The change in the Defendant's business practice immediately after being advised that she was under investigation is direct evidence of the falsity of the prior tax returns and Defendant's consciousness of guilt with respect to the charged crimes. See United States v. King, 200 F.3d 1207, 1215 (9th Cir. 1999).

In King, the district court admitted testimony of a former business associate of the defendant's which explained the general nature of the defendant's business activities. The district court reasoned that it was "'circumstantial evidence' [that] gives . . . a context in which these transactions took place.'" Id. In affirming the district court, the Ninth Circuit noted that the testimony "was not evidence of other crimes or acts outside the scope of the indictment. Rather, it was direct evidence, 'inextricably intertwined' with evidence of the crime charged." Cf. United States v. Gallagher, 1990 WL 52722, at *2 (E.D. Pa. April 24, 1990) (holding that in prosecution of tax preparer pursuant to § 7206(2), evidence that taxpayers filed amended returns and paid correct tax was not inadmissible remedial measure; evidence was relevant to rebut defense that original returns filed were valid).

The Government is not seeking to introduce the 2003 tax returns in order for the jury to infer that Defendant acted in prior years with the same intent, knowledge, or that it was part of a common scheme or plan. The opposite is true. The danger associated with introducing evidence of other crimes is that the jury may impermissibly convict based upon a general propensity to commit crime. When, as here, the Government is not introducing evidence to show any improper, much less illegal, conduct, those concerns are not at issue. Accordingly, the 2003 tax returns are not subject to a Rule 404(b) analysis.

**(c) False 2002 Tax Return for Undercover Agent and Admissions Made During Undercover Operation.**

On April 2, 2003, an undercover Internal Revenue Special Agent went to the Defendant's business to have a tax return prepared for tax year 2002. The Defendant told the undercover agent, among other things, that she was experienced in how to "win" an IRS audit and that she would look at every tax return and "redo" it to achieve the maximum deduction. Defendant boasted that other tax return preparers were trying to "copycat" her style of return preparation. When the undercover agent told the Defendant that she had to pay tax in the previous year, the Defendant told her that if the Defendant had prepared that return, she would have received a refund. The Defendant told the agent that by merely looking at a tax return, she could at least double, and usually triple or quadruple the amount of a refund on a tax return prepared by someone else. The Defendant explained that she put the "perfect makeup" on the tax returns she prepared and that "the perfect makeup will make your refund very good." Defendant referred to donation deductions as one of her "loopholes." Defendant also evinced an understanding that inflated deductions would trigger an audit:

**GARRETT:** Well, you may be audited H&R Block, but they were basic. You got no deductions. At that time in 70's the sky was the limit, there was no limitation. You can put your dog, the only requirement is -- you can put any names.

**AGENT:** Uh-huh.

**GARRETT:** They don't have no means to check it because there was no computers.

**AGENT:** Yeah.

**GARRETT:** So they don't ask for no receipt number, they didn't ask for (inaudible) number, darling. Nothing. Everything goes.

**AGENT:** Uh-huh.

**GARRETT:** I experimented them all.

**AGENT:** Oh, you did?

**GARRETT:** Oh, yes. That's (inaudible) anything over 100 you can deduct it, now it's not,

it's a limitation of (inaudible) it must be over -- anything over ten percent of your income.

**AGENT:** Uh-huh.

**GARRETT:** So now we cannot use that much and on this is really real happening that this --

**AGENT:** Uh-huh.

**GARRETT:** You have a -- you . . burglarize.

**AGENT:** Okay.

**GARRETT:** Or larceny. But in the past -- (inaudible), you lost your ring, coins (inaudible) Hey, you know, $900, $100, $1,000 or more is a big help.

**AGENT:** Yeah.

**GARRETT:** I used them all, darling.

**AGENT:** You used it all?

**GARRETT:** Yes, I experimented all of those.

**AGENT:** And nobody ever got caught?

**GARRETT:** I got audited, darling. That's what I learned. Last audit in 1976, business.

**AGENT:** You got audited or your client got --

**GARRETT:** My client did.

The Defendant also admitted to inflating deductions on a prior client's tax return to lower the client's tax liability and to fabricating a business for another client.

On August 6, 2003, the undercover agent returned to the Defendant's business to pick up the tax return, which showed a refund amount of $1,396. The agent met with the Defendant's husband, an unpaid employee, agent, and co-conspirator, to discuss the return. The return contained fabricated itemized deductions for charitable contributions, employee business expenses and child care expenses. When the agent questioned those deductions, the Defendant's husband/employee explained that these deductions were the Defendant's "loopholes" and that she invented those deductions for everyone. He also gave the undercover agent a summary sheet and explained that if

the agent had taken her tax return to H&R Block, she would have owed $3,534 instead of getting a $1,396 refund.

All of this evidence is inextricably intertwined with the charged crimes. The Superseding Indictment alleges that the Defendant prepared nine false tax returns for tax year 2002. See Superseding Indictment, Cts. 2, 4, 8, 10, 12, 14, 16, 17, 19. Those charged tax returns were being prepared by the Defendant during the same tax preparation season as the false return prepared for the undercover agent. Therefore, the preparation of the false return for the undercover agent, and the statements made to the undercover agent by both Defendant and her husband are part of the "same criminal episode" as the charged offenses. See Williams, 989 F.2d at 1070 ("The policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of [her] actions.")(internal quotations and citation omitted).

**(d) Admissions by the Defendant**

The Defendant was interviewed by Special Agents of the Internal Revenue Service on December 10, 2003 and July 7, 2007. During the December 10, 2003 interview, the Special Agents were asking Defendant about questionable deductions on tax returns she prepared from 1998 through 2003. Defendant stated, among other things, that (1) she would include "realistic" employee expenses on a client's tax return whether or not the client incurred the expense; (2) that if a client did not remember an amount of cash donations, she would figure out a percentage to deduct on the tax return; and (3) that she would deduct other amounts for donations whether or not the client had any verification of the donation. Once the Special Agents told the Defendant that an undercover agent had been sent to have a tax return prepared and that the tax return was false, the Defendant admitted that she exaggerated charitable contributions and employee business expenses on her clients' tax returns. The Defendant's explanation was that she inflated deductions for her clients because they worked hard and deserved it. Defendant also stated that she has taken tax courses and continued to take continuing education in taxation to be able to prepare tax returns. In a

second interview, Defendant admitted, among other things, to fabricating child care provider names to place on her clients' tax returns.[1/]

All of these statements are admissible pursuant to Fed. R. Evid. 801(d)(2) and are direct evidence of the charged crimes. United States v. Bibo-Rodriguez, 922 F.2d 1398, 1401 (9th Cir. 1991) (rejecting the characterization of the defendant's post-arrest admissions as "other act" evidence, noting that admissions of a party-opponent are "admissible as long as they were relevant to the case at hand"). Moreover, Defendant's statements are not admissions regarding "other acts." The defendant's general admissions of preparing fraudulent returns for her clients are direct evidence that she prepared fraudulent tax returns for tax years 2001 and 2002 which are part and parcel of the same criminal scheme as the offenses charged in the Superseding Indictment. Accordingly, such evidence is admissible without regard to an analysis pursuant to Rule 404(b). E.g., Mundi, 892 F.2d at 817 (defendant charged with wire fraud involving one travel agency only; evidence pertaining to other travel agencies not named in indictment properly admitted over defendant's objection that it was "other crimes" evidence because such evidence was "inextricably intertwined" with fraud scheme charged in indictment).

**B. The Evidence is Admissible Pursuant to Fed. R. Evid. 404(b)**

Assuming arguendo that the evidence the government seeks to introduce is not inextricably intertwined with evidence of the charged crime, which the Government does not concede, evidence regarding Defendant's preparation of the 2000 tax returns for witnesses, evidence regarding the undercover operation, and all of Defendant's statements are admissible pursuant to Rule 404(b).

"Rule 404(b) is a rule of inclusion - not exclusion . . . ." United States v. Curtin, 489 F.3d 935, 944 (9th Cir. 2007). Provided that evidence is offered for a "proper purpose," that is, for a purpose other than to prove criminal propensity, the district court is "accorded wide discretion in

---

[1/] The Government gives the above-description as illustrative only and intends to introduce other statements Defendant made during the two interviews. Defendant was provided the memoranda of these interviews in discovery and has made only a general blanket objection to the admission of the statements without identifying any specific statement. When and if any specific objection is made by the Defendant, the Government will respond accordingly.

deciding whether to admit evidence, and the test for admissibility is one of relevance." United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997).

The Ninth Circuit has developed a four part test to determine whether other act evidence is "probative of something other than criminal propensity." Johnson, 132 F.3d at 1282; Beckman, 298 F.3d at 794. To be admissible, the other act evidence must: "1) prove a material element of the crime currently charged; 2) show similarity between the past and charged conduct; 3) be based on sufficient evidence; and 4) not be too remote in time." Johnson, 132 F.3d at 1282; see also United States v. Brown, 327 F.3d 867, 873 (9th Cir. 2003); Beckman, 298 F.3d at 794. Once these four factors are satisfied, the evidence should be admitted unless "its prejudicial impact substantially outweighs its probative value." Johnson, 132 F.3d at 1282; see also Brown, 327 F.3d at 873.

In this case, all four factors of the Rule 404(b) analysis are met. First, an element is material if it is an element that the government must prove to find a defendant guilty of a crime. See Brown, 327 F.3d at 873; Johnson, 132 F.3d at 128l. With respect to the tax offenses pursuant to 26 U.S.C. § 7206(1) and (2) alleged in the Superseding Indictment, the Government must prove that the tax returns were materially false and that defendant acted wilfully. See 26 U.S.C. § 7206(1) and (2). Willfulness in the tax context means the "intentional violation of a known legal duty." United States v. Pomponio, 429 U.S. 10, 12 (1976). The evidence the Government will introduce is relevant to proving both elements because it establishes a pattern of preparing fraudulent tax returns for her clients. The consistent pattern of false tax returns tends to prove that is more probable that Defendant's conduct was purposeful and in violation of a known legal duty. See Fed. R. Evid. 401; United States v. Jackson, 845 F.2d 880, 884 (9th Cir. 1988) ("[T]he totality of [defendant's] conduct while involved in the scheme is admissible as evidence and subject to the jury's consideration in its determination of his intent.").

Similarly, the statements made to the undercover agent are highly probative of Defendant's knowledge of the applicable rules and the falsity of the tax returns. Defendant admitted to falsifying deductions which caused her client to be audited, an admission which tends to prove Defendant's

awareness of the applicable law. Defendant's admissions, made through her unpaid employee and agent, Gregory Garrett, Sr. also are highly probative of Defendant's willfulness to claim false deductions on clients' tax returns using "loopholes" knowing that doing so was in violation of law. Similarly, the admissions Defendant made to the Special Agents regarding the inflated deductions on her clients tax returns go directly to Defendant's willfulness and the material falsity of the tax returns. See United States v. Lindsay, 14 Fed. Appx. 838, 2001 WL 770433, at **1 (9th Cir. April 17, 2001) (unpublished) (holding that admissions by defendant to Internal Revenue Service personnel that he knew how to and did manipulate information on tax returns to achieve lower taxable income for his clients admissible pursuant to Rule 404(b)).

The evidence is also relevant to proving a common scheme or plan and the absence of mistake or accident. The similarity of the false itemized deductions on the 2000 tax returns Defendant prepared for clients, the tax return prepared for the undercover agent, and Defendant's admissions in the undercover operation and to the agents tend to prove a common scheme to inflate and fabricate deductions on federal tax returns in order to increase a refund amount. The similarity in the false deductions also tends to make it more probable that Defendant was the genesis of the fraudulent items on her clients' tax returns. The continuing pattern of similar false itemized deductions on the uncharged tax returns also tends to prove that is less probable that the falsity was the result of any negligence, good faith, or reliance on the clients' information.

Second, the evidence is "similar enough to be probative of intent." Johnson, 132 F.3d at 1283; see also United States v. Desalvo, 41 F.3d 505. 509-10 (9th Cir. 1994). In this case, all of the evidence involves conduct that is not only similar, but precisely the same, as the conduct underlying the charged crimes. Thus, the evidence is clearly probative of the material issues of the falsity of the tax returns and Defendant's willfulness.

Third, the admissibility of an other crime, wrong, or act is supported by sufficient evidence if "'. . . the jury can reasonably conclude that the act occurred and that the defendant was the actor.'" Johnson, 132 F.3d at 1283 (quoting Huddleston v. United States, 485 U.S. 681, 689 (1988). "This

reliability threshold is not a high one." Johnson, 132 F.3d at 1283. The evidence proffered includes tax returns prepared by the Defendant, witness testimony, the recorded statements of Defendant in the undercover operation, and testimony of IRS Special Agents who interviewed the Defendant. The quantum of evidence is more than sufficient for the jury to find that Defendant prepared the uncharged false tax returns and engaged in the conduct that is the subject of Defendant's statements.

Fourth, the evidence concerns conduct that is not remote in time from the charged offenses. The Ninth Circuit has not specified a particular time in which a prior act becomes too remote. "Rather, '[d]epending upon the theory of admissibility and the similarity of the acts ... some remote acts may be extremely probative and relevant.' " Johnson, 132 F.3d 1279 (quoting United States v. Spillone, 879 F.2d 514, 519 (9th Cir. 1989). Defendant's preparation of the uncharged tax returns occurred either simultaneously with or in close proximity to the charged conduct. Additionally, as mentioned above, the evidence concerns conduct that is identical to the crimes charged, and is therefore extremely probative of the charged conduct. See United States v. Lowe, 76 F.3d 389, 1996 WL 19215, *4 (9th Cir. Jan. 18, 1996) (unpublished) (holding in a § 7206(2) prosecution that the evidence of forty-eight uncharged tax returns that contained similar false statements and false amounts was more probative than prejudicial and not so cumulative to constitute an abuse of discretion).

Finally, given that the Government's evidence satisfies all four elements of the Ninth Circuit's test for admissibility, the evidence should be admitted its "prejudicial impact substantially outweighs its probative value." United States v. Blitz, 151 F.3d 1002, 1008 (9th Cir. 1998). "Even if the evidence 'result[s] in some prejudice (as all unfavorable evidence about a defendant does),' it is only inadmissible if it is '"unfair prejudice"' that '"substantially outweigh[s] the high probative value of the evidence."' Blitz, 151 F.3d at 1009; see also United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977) (affirming that other bad acts evidence "'is not rendered inadmissable because it is of a highly prejudicial nature[;][t]he best evidence often is'") (citation omitted).

"Evidence is unfairly prejudicial if it 'makes a conviction more likely because it provokes an

emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged*." United States v. Yazzie, 59 F.3d 807, 811 (9th Cir. 1995). The probative value of the evidence described above is great. All of the evidence goes directly to proving the falsity of the tax returns that are the bases for the charged offenses, and none of the evidence can even remotely rise to the level of being unfairly prejudicial or characterized as inflammatory.

For all of the above-stated reasons, Defendant's motion to exclude the above-described evidence should be denied.

**II.**

**RESPONSE TO DEFENSE REQUEST TO VOIR DIRE JURY**

The government has no objection to allowing the Defendant to voir dire the jury. Pursuant to Federal Rules of Criminal Procedure 24(a)(2) if the court examines the jurors, it must permit the attorneys for the parties to (A) ask further questions that the court considers proper; or (B) submit further questions that the court may ask if it considers them proper. In accordance with Rule 24, the government requests that the Court hold the Defendant to the Court's recently issued Criminal Trial Procedures. Therefore, government requests that Defendant file proposed voir dire questions three court days before the date of trial and be held to 10 minutes for follow up questions to the jury.

**III.**

**RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE GREGORY GARRETT, SR.'S STATEMENTS TO SPECIAL AGENT CECILIA BRAGA**

Defendant argues that the admission of statements made by Gregory Garrett, Sr. to Special Agent Cecilia Braga ("SA Braga") would violate the Defendant's Sixth Amendment right to confrontation. First, the initial determination that needs to be made is whether the statements by Gregory Garrett, Sr. were "testimonial." Crawford v. Washington, 541 U.S. 36 (U.S. 2004). The Court in Crawford declined to fully define which statements are testimonial but they stated that at a minimum prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations are testimonial. Id. At 53. Crawford also did not give a clear definition of

what constituted police interrogations, but stated that "[ j]ust as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not select among them in this case. Sylvia's recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition." Id. at 53; see also Davis v. Washington, 547 U.S. 813, 822 (U.S. 2006) ("The questioning that generated the deponent's statement in Crawford--which was made and recorded while she was in police custody, after having been given Miranda warnings as a possible suspect herself–'qualifies under any conceivable definition' of an 'interrogation.'"). Crawford also stated that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51.

The Defendant argues that Gregory Garrett's statements are testimonial because they were made during an investigation to an undercover law enforcement agent. This argument is not supported by the law or by the facts. The decision as to whether a statement is testimonial is not based upon the identity of the listener, but the perception of the speaker. See United States v. Buelna, 252 Fed. Appx. 790, 791 (9th Cir. 2007) (holding that a declarant's statement made to an informant was admissible because the declarant would not have expected his statement would be used prosecutorily or reasonably believed it would be used at trial, or otherwise expected that it would be used as testimony); United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004) (holding where a statement was made to an informant the proper inquiry is whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime); Parle v. Runnels, 387 F.3d 1030, 1037 (9th Cir. 2004) (stating that the petitioner conceded that a diary was not testimonial because it was not created under circumstances which would lead an objective witness reasonably to believe that [it] would be available for use at a later trial.)

The holding cited by Defendant from Davis v. Washington, 547 U.S. 813 does not apply to this case because Gregory Garrett, Sr. was not being interrogated in the course of a police

investigation.  In the Davis case, the declarant was a person calling a 911 operator in the course of an emergency requesting assistance.  Id.  The declarant in Davis knew he was talking to law enforcement and in fact had called law enforcement for assistance.  This case is distinguishable because Gregory Garrett, Sr. had no idea he was talking to law enforcement.  He was simply explaining a tax return to what he thought was a new client.  SA Braga was not asking questions about a past criminal event.  SA Braga was asking questions about the tax return that was prepared for her by Defendant.  Therefore, the holding in Davis has no application to this case.

Gregory Garrett, Sr. made his statements to SA Braga at Defendant's business office.  At the time that he made the statements he thought that SA Braga was in fact Cecilia Vicente, a client that was coming in to get her tax return prepared by Defendant.  Gregory Garrett, Sr.'s statements were recorded.  However, he had no idea that SA Braga was law enforcement and he had no idea his statements would be used in a trial or used in any way as testimony.  He was not responding to "structured police questioning" nor did he think that he was a suspect in a criminal matter.  Gregory Garrett, Sr. was simply explaining to a "client" how Defendant prepared her tax return and how Defendant calculated the refund.  Therefore, Gregory Garrett, Sr.'s statements were not testimonial because they were not made during a police interrogation.

Additionally, his statements are not testimonial and they are not hearsay because they are statements made as a co-conspirator and as Defendant's agent.  Although Crawford did not define "testimonial" the Court explicitly noted that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial--for example, business records or statements in furtherance of a conspiracy." 541 U.S. at 56.  For statements that are not testimonial in nature, Confrontation Clause scrutiny need not apply, and the rule permits admission of an unavailable witness's statement against a criminal defendant so long as it "bears adequate indicia of reliability."  United States v. Wilson, 148 Fed. Appx. 602, 604-605 (9th Cir. 2005) (unpublished) (citing Crawford, 541 U.S. at 42, 68 and Ohio v. Roberts, 448 U.S. 56, 66 (1980)).  This test is met where the declarant is unavailable and the evidence falls within a "firmly rooted hearsay exception," or bears

"particularized guarantees of trustworthiness." Roberts, 448 U.S. at 66. The admissibility of co-conspirator statements as non-hearsay qualifies as a "firmly rooted" hearsay exception under the Roberts test. Bourjaily v. United States, 483 U.S. 171, 183 (1987); Idaho v. Wright, 497 U.S. 805, 815 (1990). "Co-conspirator statements in furtherance of a conspiracy are both inherently trustworthy and 'firmly rooted.' The Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E)." Bourjaily v. United States, 483 U.S. 171, 183-84 (1987). If a co-conspirator's statements are properly admitted pursuant to Rule 801(d)(2)(E), there is no Confrontation Clause violation. United States v. Arambula-Ruiz, 987 F.2d 599, 607 (9th Cir. 1993)

Here, Gregory Garrett, Sr.'s statements are not hearsay and are not testimonial. His statements are offered as non-hearsay statements of a party opponent pursuant to 801(d)(2)(C),801(d)(2)(D), 801(d)(2)(E) . His statements were made as Defendant's agent and as a co-conspirator.[2/] Therefore, his statements are not testimonial, are not hearsay, and are admissible. Accordingly, Defendant's motion should be denied.

**CONCLUSION**

For the reasons stated, the Court should deny the Defendant's motions in limine.

DATED: August 28, 2008

/s/ Christopher S. Strauss
Christopher S. Strauss
Special Assistant United States Attorney
Attorney for Plaintiff
United States of America
Email: Christopher.S.Strauss@usdoj.gov

/s/ Elizabeth C. Hadden
Elizabeth C. Hadden
Special Assistant United States Attorney
Attorney for Plaintiff
United States of America
Email: Elizabeth.C.Hadden@usdoj.gov

[2/] The co-conspirator and agency issue were fully briefed in Rec. Doc. No. 43.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. FE S. GARRETT, Defendant. | Case No. 08CR0918-L<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Christopher S. Strauss, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.

I have caused service of GOVERNMENT'S OMNIBUS RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS on defendant FE S. GARRETT, pro se, by sending a copy of the motion via Federal Express on August 28, 2008 to defendant at the following address:

The Geo Group
Reg. # 0799-0298
Western Region Detention Facility
220 West C Street
San Diego, CA 92101

//

I have caused service of GOVERNMENT'S OMNIBUS RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE on defendant's standby counsel by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Erica Kristine Zunkel
Federal Defenders of San Diego
225 Broadway, Suite 900
San Diego, CA 92101

Erica_zunkel@fd.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 28, 2008

/s/ Christopher S. Strauss
CHRISTOPHER S. STRAUSS
Special Assistant United States Attorney

Government's Omnibus Response and Opposition to Defendant's Motions in Limine 08CR0918-L