KAREN P. HEWITT
United States Attorney
CHRISTOPHER S. STRAUSS
ELIZABETH C. HADDEN
Special Assistant U.S. Attorneys
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 557-7845

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>FE S. GARRETT<br>        Defendant. | Criminal Case No.  08CR0918-L<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>DATE:  September 9, 2008<br>TIME:  9:00 a.m. |

The United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christopher S. Strauss and Elizabeth C. Hadden, Special Assistant U.S. Attorneys, hereby files its Trial Memorandum.

## I.

## STATUS OF THE CASE

**A.     Trial Status**

Trial is set to begin on Tuesday, September 9, 2008, in San Diego, before the Honorable M. James Lorenz, United States District Judge.  Estimated trial time for the Government's case is eight days.

**B.      Indictment**

The Superseding Indictment charges defendant with the following offenses:

Counts One through Twenty allege aiding and assisting in the preparation and presentation of false tax returns, in violation of Title 26, United States Code Section 7206(2);

Counts Twenty-one through Twenty-four allege filing false personal income tax returns for the years 2001, 2002, 2004 and 2005, in violation of Title 26, United States Code Section 7206(2);

Counts Twenty-five through Thirty allege failing to pay federal income tax, in violation of Title 26, United States Code Section 7203.

**C.      Custody Status**

Defendant has been detained since being arrested on March 28, 2008.  The Government orally moved for detention on April 1, 2008 (Doc. #7).  On April 4, 2008, Magistrate Judge Anthony J. Battaglia denied the Government's motion to detain defendant, and set the following bond requirements: (1) $100,000 P/S secured by real property, (2) Nebbia / examination prior to release and conditions filed.  To date, defendant has not met the conditions set. (Docs. #25, 34, and 36).

**D.      Interpreter**

The Government anticipates that a Tagalog interpreter will be necessary for one Government witness at trial.

**E.      Jury Waiver**

No jury waiver has been filed.

**F.      Pretrial Motions**

The Court set a motions hearing on September 3, 2008, at 9:00 A.M. The Court granted the Government's Motion for an Order Allowing Limited Disclosure of Tax Return Information (Doc. #14) and the Government's Motion for Disclosure of Grand Jury Information (Doc #16).  The Court also granted the Joint Motion to Continue Pretrial Proceedings and Trial Date Pursuant to Speedy Trial Act (Doc #30).   The defendant's oral motion to proceed *pro se* was granted on May

1   29, 2008.  (Doc. #22).

2           The following defense motions are pending (Doc. #41):

3   (1)     To Compel Discovery and Preserve Evidence;

4   (2)     To Suppress Statments;

5   (3)     To Suppress Evidence;

6   (4)     Dismiss Indictment Due to Misinstruction of Grand Jury;

7   (5)     Dismiss Indictment Due to Undue Delay in Filing the Charges;

8   (6)     Dismiss Indictment Due to Selective Prosecution;

9   (7)     Dismiss the Indictment Due to the Government Misleading the Grand Jury;

10  (8)     Dismiss Indictment for Prosecutorial Misconduct;

11  (9)     To Order the Government to Disclose Identity of Informant; and

12  (10)    To Produce Witness and Exhibit List

13  (11)    Motion *in Limine* to Preclude 404(b) Evidence (Doc. #53)

14  (12)    Motion *in Limine* to Allow the Defendant to Voir Dire the Jury

15  (13)    Motion *in Limine* to Preclude any Statement Made by the Defendant's Husband, Gregory

16          Garrett, Sr.

17          The following Government motions are pending:

18  (1)     Motion in Limine to Admit Statements of Gregory Garrett, Sr. (Doc. #43);

19  (2)     Motion in Limine to Admit Business Records (Doc. #49).

20  **G.     Witnesses**

21          The Government expects to call approximately twenty-six witnesses in its case in chief.

22  **H.     Attorneys**

23          The United States will be represented by Special Assistant United States Attorneys

24  Christopher S. Strauss and Elizabeth C. Hadden.  Defendant is representing herself; Erica K.

25  Zunkel, Federal Defender, was appointed standby counsel by Magistrate Judge Battaglia on May

26  29, 2008.

27  **I.      Discovery**

28          Ongoing discovery is being provided to the defendant by the Government.  The

3

1   Government has requested reciprocal discovery, but the defense has provided none.  The

2   Government has provided the *curriculum vitae* of summary expert witness Emeterio Ramirez as

3   well as an explanation of the bases of his expected testimony.  The Government has also provided

4   draft summary schedules the Government intends to introduce pursuant to Fed. R. Evid. 1006 as

5   well as draft tax computations.

**II.**

**STATEMENT OF FACTS**

8       The United States expects to prove the following facts, among others, at trial:

9   **A.      Overview**

10      Fe S. Garrett was a self-employed individual who earned and received income from two

11  businesses: a business in which she earned and received fees for providing various accounting,

12  bookkeeping and tax-related services to clients, including tax return preparation services; and a

13  real estate sales and loan-related business in which she earned and received fees and commissions

14  for providing various services to clients, including mortgage re-financing services.  In her tax

15  return preparation business, Garrett prepared false and fraudulent federal income tax returns that

16  claimed overstated and/or fabricated itemized deductions and child care expenses.  Garrett also

17  filed her own false and fraudulent federal income tax returns for tax years 2001, 2002, 2004 and

18  2005 that understated her business gross receipts and for tax years 2001 and 2002, falsely claimed

19  the Head of Household status, which is a filing status reserved for unmarried persons or married

20  persons who do not live together.  Finally, Garrett failed to pay approximately $279,000 in federal

21  income tax she admitted she owed on her filed federal income tax returns for tax years 2001

22  through 2006, inclusive.

23  **B.      Preparation of False Returns for Clients**

24      The tax returns at issue were prepared by the defendant, although Garrett did employ

25  others, including her husband, children and relatives, to assist her in her tax preparation business.

26  Defendant's clients will testify that they did not provide inflated amounts of itemized deductions

27  to the defendant and did not authorize the defendant to inflate and/or fabricate itemized

28  deductions.  Defendant also fabricated a child care provider for one client in order to further

4

1    reduce the client's tax liability, and she inflated rental real estate expense on a Schedule E for

2    another client.

3        On April 2, 2003, an undercover Internal Revenue Special Agent went to the defendant's

4    business to have a tax return prepared for tax year 2002.  The defendant told the undercover agent,

5    among other things, that she was experienced in how to "win" and audit, that she would look at

6    every return and redo it to achieve the maximum deduction.  When the undercover agent told the

7    defendant that she had to pay tax in the previous year, the defendant told her that if the defendant

8    had prepared that return, she would have received a refund.  The defendant told the agent that by

9    merely looking at a tax return, she could at least double, and usually triple or quadruple the amount

10   of a refund on a tax return prepared by someone else.  The defendant explained that she put the

11   "perfect makeup" on the tax returns she prepared.  The defendant explained that "the perfect

12   makeup will make your refund very good."  The defendant also described inflating deductions on a

13   prior client's tax return to lower the tax liability, and fabricating a business for another client.

14       On August 6, 2003, the undercover agent returned to the defendant's business to pick up the

15   tax return, which showed a refund amount of $1,396.  The agent met with the defendant's husband,

16   an unpaid employee, to discuss the return.  The return contained fabricated itemized deductions for

17   charitable contributions, employee business expenses and child care expenses.  When the agent

18   questioned those deductions, the defendant's husband/employee explained that these deductions

19   were the defendant's "loopholes" and that she invented those deductions for everyone.  He also

20   gave the undercover agent a summary sheet and explained that if the agent had taken her tax return

21   to H&R Block, she would have owed $3,534 instead of getting a $1,396 refund.

22       Defendant initially told Special Agents that (1) she would include "realistic" employee

23   expenses on a client's tax return whether or not the client incurred the expense; (2) that if a client

24   did not remember an amount of cash donations, she would figure out a percentage to deduct on the

25   tax return; (3) that she would deduct other amounts for donations whether or not the client had any

26   verification of the donation.  Once the Special Agents told the defendant that an undercover agent

27   had been sent to have a tax return prepared and that the tax return was false, the defendant admitted

28   that she falsified charitable contributions and employee business expenses on her clients' tax

1   returns. The defendant's explanation was that she inflated deductions for her clients because they

2   worked hard and deserved it.

3       In a second interview, the defendant admitted fabricating child care provider names on her

4   clients' tax returns..

5       **C.  Evidence of the Undercover Investigation**

6       The undercover agent tape-recorded each meeting with the defendant and other members of

7   Faye's Tax Service, including her husband.  Portions of these recordings, with transcripts, will be

8   presented at trial.  All of the recordings have been provided to the defendant in discovery.  In

9   addition, the fraudulent tax return prepared for the undercover agent by the defendant and related

10  documents will be introduced.

11      **D.  The Defendant's Own False Tax Returns and Failure to Pay Tax**

12      The defendant utilized a different method to under report her own federal income tax

13  liabilities.  Garrett simply omitted gross receipts she earned from her businesses in tax years 2001,

14  2002, 2004 and 2005 and, for the years 2001 and 2002, Garrett also fraudulently claimed the Head

15  of Household status despite being married.   Head of Household filing status is reserved for

16  unmarried persons (or married persons who lived apart for the last six months of a tax year) and

17  who paid over half the expenses of maintaining a household with a qualifying dependent, such as a

18  child or dependent parent.  For tax years 2001 through 2006, defendant and her husband filed

19  separate tax returns.

20      An analysis of the defendant's bank accounts was conducted in order to determine the

21  defendant's true business gross receipts.  The Government expects the evidence to establish that the

22  defendant failed to report business gross receipts on her filed federal income tax returns in

23  approximate amounts of $38,226 in 2001, $162,283 in 2002, $85,245 in 2004, and $26,400 in 2005.

24      In addition to establishing that the defendant filed false tax returns that under reported her

25  business gross receipts, evidence at trial will establish that the defendant has failed to pay any

26  income taxes for the years 2001 through 2006 on income she did report.  The defendant filed

27  federal income tax returns for tax years 2001, 2002, 2003, 2004, 2005, and 2006 on which she self-

28  reported income tax due of $5,714, $9,585, $187,319, $15,072, $39,647, and $29,125, respectively.

Certified official records of the Internal Revenue Service will establish that as of July, 2008 defendant has not made any payments of income tax for tax years 2001 through 2006.

### III

### **WITNESSES**

The following witnesses (in alphabetical order) may be called by the United States to testify at trial.

IRS Special Agent Maria Alvarez

Zenaida Aquinde

Pepito Aure

Christopher Aure

IRS Special Agent Cecilia Braga

IRS Special Agent Robert Brana

Antonio Cruz

Michelle Davis

Nicole De Lahay

Zenaida Diomino

Rosalina Dimalig (formerly Rosalina Colocado)

Homer Dizon

Sonny Domingo

Lorenda Fabro

Gregory Garrett, Jr.

William Geideman

IRS Special Agent Adam Gigler

IRS Revenue Officer Sharon Hill

IRS Special Agent Cherry Jiminez

IRS Computer Information Specialist Roger Lange

Myleen Larson

Jerry McCawley

1   Thomas Miller

2   IRS Revenue Agent Emeterio Ramiriez

3   IRS Special Agent Edward Reyes

4   Rick Schuller

5                                      **IV**

6                                 **EXHIBITS**

7           The data and records underlying the summary charts and computations were provided

8   during discovery; draft summary charts and draft tax computations were provided to defendant on

9   August 12, 2008.  A set of pre-marked exhibits will be provided to defendant prior to trial.  A final

10  exhibit list will be provided to the clerk of the court at the time of trial.  The United States reserves

11  the right to supplement the exhibit list during the trial.  Any changes will be brought to the attention

12  of the defendant, stand-by counsel and the court promptly and any additional exhibits will be

13  provided.

14          The Court has approved the Government's use of a computer-based trial presentation

15  system to display its exhibits to the jury.  The system will be installed prior to trial.

16                                      **V**

17                           **JURY INSTRUCTIONS**

18          The United States will submit its proposed jury instructions on September 9, 2008 to the

19  Court and defendant.  The United States intends to submit instructions that apply specifically to the

20  issues in this case and respectfully requests that the Court give any additional general instructions

21  that it deems appropriate.  The Government requests leave to offer additional instructions during

22  the course of the trial that may become appropriate.

23                                     **VI**

24                              **STIPULATIONS**

25          The Government requested that defendant stipulate to the foundation of undisputed and

26  routine business records, including bank records and records of title companies to avoid the

27  necessity of calling numerous records custodians.  To date, the defendant has refused to stipulate to

28  the authenticity of any business records.  However, as set forth in the Government's Motion in

Limine to Introduce Business Records (Doc. # 49), business records of banking institutions and title

companies are admissible if certified pursuant to Fed. R. Evid. 803(6) and 902(11).

## VII

## LEGAL ISSUES

**A.      Aiding and Assisting in the Preparation of False Tax Returns, 26 U.S.C. § 7206(2)**

Title 26, United States Code Section 7206(2), provides in pertinent part,

> Any person who...willfully aids or assists in, or procures, counsels, or
> advises the preparation or presentation under, or in connection with
> any matter arising under, the internal revenue laws, of a return,
> affidavit, claim, or other document, which is fraudulent or is false as
> to any material matter, whether or not such falsity or fraud is with the
> knowledge or consent of the person authorized or required to present
> such return, affidavit, claim, or document...shall be guilty of a felony
> and, upon conviction thereof, shall be fined not more than
> $100,000...or imprisoned not more than 3 years, or both, together
> with the costs of prosecution.

1.      <u>Essential Elements</u>

The essential elements of assisting the preparation of a false return are:

a.      the defendant aided, assisted, or otherwise caused the preparation and presentation of a return;

b.      that the return was fraudulent or false as to a material matter, <u>i.e.</u> something necessary to determine whether tax is owed; and

c.      the act of the defendant was willful.

<u>United States v. Salerno</u>, 902 F.2d 1429, 1432 (9th Cir.1990); Ninth Circuit Model Criminal Jury

Instructions, 9.38.  The Ninth Circuit has held that the filing of a false return is an element of a §

7206(2) offense.  <u>United States v. Dahlstrom</u>, 713 F.2d 1423,1429 (9th Cir. 1983).  Although the

filing of a return is necessary for the completion of the offense, the defendant does not have to

actually file the return as long as the defendant's conduct led to the filing of the false tax return.

<u>United States v. Kellogg</u>, 955 F.2d 1244, 1249 (9th Cir. 1992).

A person acts "willfully" by voluntarily and intentionally assisting or advising another to do

something that the person knows disobeys or disregards the law.  A person does not act "willfully"

if the person acts as a result of a good faith misunderstanding of the requirements of the law.  Ninth

9

1 Circuit Model Criminal Jury Instructions, 9.38 (2003).  It is not a defense that the defendant

2 believed the income tax laws are wrong or unconstitutional.  Cheek v. United States, 498 U.S. 192,

3 205-06 (1991).  Business experience is probative of willfulness.  United States v. Smith, 890 F.2d

4 711, 715 (5th Cir. 1989) (defendant's experience as an entrepreneur pointed to willfulness rather

5 than honest error).

6         2.     Taxpayer's Knowledge of Falsity of Tax Return is Not Relevant.

7 The Government is not required to prove that the taxpayer knew that the return was false.

8 As Justice Learned Hand stated when discussing the statutory predecessor of Section 7206(2),

9
> The purpose was very plainly to reach the advisors of taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would

10 > get with their principals, who might be altogether innocent.

11 United States v. Kelley, 105 F.2d 912, 917 (2d Cir. 1939).  Conversely, § 7206(2) explicitly

12 provides that a person who aids or assists in the preparation of a false tax return can be criminally

13 liable "whether or not such falsity or fraud is with the knowledge or consent of the person

14 authorized or required to present such return."

15

16         4.     Signing of Document Not Required in Section 7206(2)

17 Section 7206(2) prohibits the assisting or aiding, procuring, counseling or advising the

18 preparation or presentation of a false document.  The fact that the defendant does not actually sign

19 the document "is not material."  United States v. Crum, 529 F.2d 1380, 1382 n.4 (9th Cir. 1976).

20         5.     Omitted Receipts and Fabricated Deductions Material Items

21 Omitted gross receipts are material matters for purposes of criminal tax violations.  United

22 States v. Marashi, 913 F.2d 724, 736 (9th Cir. 1990).

23 **B.    Subscribing and Filing False Tax Returns, 26 U.S.C. § 7206(1)**

24 Title 26, United States Code Section 7206(1), provides in pertinent part:

25
> Any person who willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made

26 > under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of an offense against the United

27 > States.

28         1.     Essential Elements

1    The essential elements of willfully failing to pay tax are:

2              a.    First, the defendant made and signed a tax return that she knew

3    contained false information as to a material matter;

4              b.    the return contained a written declaration that it was being signed

5    subject to the penalties of perjury; and

6              c.    in filing the false tax return, the defendant acted willfully.

7    Ninth Circuit Model Criminal Jury Instructions, 9.37 (2003).

8              2.    Omitted Receipts and Fabricated Deductions Material Items

9         False information on a tax return is material if it has a natural tendency to influence or is

10   capable of influencing or affecting the ability of the IRS to audit or verify the accuracy of the tax

11   return or a related return.  Ninth Circuit Model Criminal Jury Instructions, Comment (citing

12   United States v. Gaudin, 515 U.S. 506, 509 (1995)).  Materiality is a question of fact for the jury.

13   United States v. Uchimura, 125 F.3d 1282, 1284 (9th Cir. 1997).  Omitted gross receipts have been

14   found to be material matters for purposes of criminal tax violations.  United States v. Marashi, 913

15   F.2d 724, 736 (9th Cir. 1990).

16              3.    Bank Deposits Method of Proof

17        The Government will use the bank deposits method of proof to establish the amount of

18   defendant's business gross receipts.  This method of proof is an indirect method of proving

19   receipts and income.  It is used to establish unreported receipts and income in cases where direct

20   methods of proof are unavailing.  United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985);

21   United States v. Soulard, 730 F.2d 1292, 1296 (9th Cir. 1984); ;  United States v. Abodeely, 801

22   F.2d 1020, 1023 (8th Cir. 1986);  United States v. Helina, 549 F.2d 713, 720 (9th Cir. 1977).  In

23   order to prove unreported gross receipts, the Government must initially introduce evidence to

24   show "(1) that, during the tax years in question, the taxpayer was engaged in an income producing

25   business or calling; (2) that he made regular deposits of funds into bank accounts; and (3) that an

26   adequate and full investigation of those accounts was conducted in order to distinguish between

27   income and non-income deposits." Stone, 770 F.2d at 844 (quoting United States v. Morse, 491

28   F.2d 149 (1st Cir. 1974)).  The bank deposits method of proof proceeds in the following manner:

11

1
2
3

> The bank deposits for the tax year are totaled, with adjustments made for funds in transit at the beginning and the end of the year. Non-income deposits are then excluded, and non-deposited income is included. This constitutes a reconstructed gross income.

4   Soulard, 730 F.2d at 1296 n.1 (quoting United States v. Hall, 650 F.2d 994, 996 n.4 (9th Cir.

5   1981). In Soulard, a tax evasion case, the court explained that the bank deposits method of proof

6   continues by calculating taxable income.  Id.  In a false return case, the Government is not required

7   to prove an actual tax due.  United States v. Scholl, 166 F.3d 964, 980 (9th Cir. 1999) ("Whether

8   there was an actual tax deficiency is irrelevant because the statute is a perjury statute.") (citation

9   omitted).

10       The Government has alleged that the defendant failed to report all of her business gross

11   receipts.  Although an actual tax due is not an essential element of a charge pursuant to § 7206(1),

12   the Government will produce evidence of the tax effect of the understatement in gross receipts as it

13   bears on the issue of materiality.  See Id. (noting that information is material if it is necessary to a

14   determination of whether income tax is owed).

15               4.       Proof of one False Item is Sufficient

16       When a single count of a violation of § 7206 charges multiple false items, the government

17   does not have to prove all of the false items.  Proof of one materially false item is sufficient.  See

18   Griffin v. United States, 502 U.S. 46 (1991) (when a jury returns a guilty verdict on an indictment

19   charging several acts in the conjunctive, the verdict stands if the evidence is sufficient as to any

20   one of the acts charged); United States v. Helmsley, 941 F.2d 71, 91 (2d Cir. 1991) (finding that

21   where deductions taken by taxpayer were either overstated or mischaracterized, in either case entry

22   was "false and fraudulent").

23       **C.    Willfully Failing to Pay Tax, 26 U.S.C. § 7203**

24       Title 26, United States Code Section 7203, provides in pertinent part:

25   Any person required under this title to pay any . . . tax, . . . who willfully fails to
     pay such . . . tax, . . . at the time . . . required by law or regulations . . . shall be
26   guilty of an offense against the United States.

27               1.       Essential Elements

28       The essential elements of willfully failing to pay tax are:

1                a.        the defendant owed income tax;

2                b.        the defendant failed to pay the tax by the time required by law; and

3                c.        the defendant acted for the purpose of evading her duty under the tax

4                        laws and not as a result of accident or negligence.

5  Ninth Circuit Model Criminal Jury Instructions, 9.36 (2003).

6                2.    <u>Ability to Pay</u>

7        In order to prove a defendant willfully failed to pay tax, the Government is not required to

8  prove that the defendant had the ability to pay the tax when the tax became due.  <u>See</u> <u>United States</u>

9  <u>v. Easterday</u>, ____ F.3d ____, 2008 WL 3876593, at *1, 5 (9th Cir. August 22, 2008).  A

10  defendant's inability to pay the tax due is not a defense to a charge of willful failure to pay tax and

11  the defense is not entitled to an instruction on her inability to pay.  <u>Id.</u>, at *6.  Willfulness is an

12  intentional violation of a known legal duty.  <u>United States v. Pomponio</u>, 429 U.S. 10, 12 (1976).  If

13  a defendant knows that they owe tax and she does not pay the tax, the defendant has acted

14  willfully.  <u>Easterday</u>, 2008 WL 3876593, at *1.

15                                      **VIII**

16                        **EVIDENTIARY ISSUES**

17    **A.**      **Summary Witness Testimony and Summary Schedules**

18        Near the end of its case, the United States will call as a summary witness, IRS Revenue

19  Agent Emeterio Ramirez, who is trained in accounting and the computation of tax liabilities.  This

20  witness will provide an analysis of all the witness testimony at trial, summaries of voluminous

21  bank records, summaries of financial records introduced into evidence, and explain the tax

22  consequences of the Government's evidence.  Revenue Agent Ramirez will provide Rule 1006

23  summaries of voluminous records and provide summary tax computations and schedules pursuant

24  to Fed. R. Evid. 611(a).

25            1.    <u>Fed. R. Evid. 1006 Summaries of Voluminous Evidence</u>

26        The Rule 1006 summaries must summarize information which is voluminous, admissible,

27  and available for inspection.  <u>City of Phoenix v. Com/Systems, Inc.</u>, 706 F.2d 1033, 1038 (9th Cir.

28  1983); <u>United States v. Johnson</u>, 594 F.2d 1253, 1255 (9th Cir. 1979).  While the underlying

1   documents must be admissible, they need not be admitted at trial.  Johnson, 594 F.2d at 1257, n. 6;

2    United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir. 1988).  Summaries of voluminous records

3   that are introduced pursuant to Fed. R. Evid. 1006 are themselves the evidence and are therefore

4   admissible at trial.  See  United States v. Baker, 10 F.3d 1374, 1411 (9th Cir. 1993) ("this Circuit

5   has often allowed the use of summary charts and summary witness testimony based on testimonial

6   evidence (most commonly in tax cases)"), cert. denied, 513 U.S. 934 (1994), *overruled on other*

7   *grounds*, United States v. Nordby, 225 F.3d 1053 (9th Cir 2000); United States v. Wood, 943 F.2d

8   1049, 1053 (9th Cir. 1991).

9        The introduction of summary witness testimony and summary schedules has been approved

10   by the Ninth Circuit in tax cases, United States v. Marchini, 797 F.2d 759, 756-766 (9th Cir.

11   1986); United States v. Greene, 698 F.2d 1364, 1367 (9th Cir. 1983); Barsky v. United States, 339

12   F.2d 180 (9th Cir. 1964).  "The fact of a tax due and owing may be established by documentary

13   evidence of tax liability, accompanied by a summary by an expert."  United States v. Voorhies,

14   658 F.2d 710, 715 (9th Cir. 1981).  A summary witness draws conclusions from the evidence

15   presented at trial.  United States v. Esser, 520 F.2d 213, 217-18 (7th Cir. 1975).  A summary

16   witness may be used to help the jury organize and evaluate evidence which is factually complex

17   and fragmentally revealed in the testimony of a multitude of witnesses.  See United States v.

18   Baker, 10 F.3d 1374, 1411 (9th Cir. 1983).  The summary witness may review the evidence in a

19   manner that advocates the Government's theory of the case, and need not give effect to the

20   contentions of the defendant.  Barsky, at 181; United States v. Moore, 997 F.2d 55, 58-59 (5th Cir.

21   1993).  Copies of the summaries may be published to the jury while the expert testifies concerning

22   them.  Id.

23        The Government will offer summary schedules of voluminous bank records of bank

24   accounts into which defendant deposited her business receipts from her tax return preparation

25   business and her mortgage refinance business in tax years 2001, 2002, 2004, and 2005.  They are

26   records that are routinely kept by banks in the normal course of business and so fall under the

27   hearsay exception of Rule 803(6).  Additionally, the Government has filed certifications of

28   domestic business records pursuant to Fed. R. Evid. 902(11) with the Court to establish the

14

1   admissibility of the bank records.  (Rec. Doc. No. 49).  The underlying bank records have been

2   available to the defense since the beginning of this case.

3

4       2.      Summary Witness Testimony and Other Summary Schedules

5           In addition to testifying concerning the Rule 1006 summaries, Revenue Agent Ramirez will

6   also present to the jury various tax computations and summaries that he has prepared from the

7   evidence that was admitted during trial.  The purpose is to assist the Court and the jury through

8   what may be at times complex financial evidence.

9           Rule 611(a) of the Federal Rules of Evidence authorizes the court to "exercise reasonable

10  control over the mode...of...presenting evidence so as to (1) make the... presentation effective for

11  the ascertainment of the truth, [and] (2) avoid needless consumption of time."  United States v.

12  Gardner, 611 F.2d at 776 (9th Cir. 1980) (summary chart admissible in tax evasion case under

13  Rule 611(a)); United States v. Paulino, 935 F.2d 739, 752-54 (6th Cir. 1991) (testimony of

14  nonexpert summary witness regarding cash generated from cocaine sales in drug conspiracy case

15  admissible under Rule 611(a) where trial court gave limiting instruction and defense had full

16  opportunity to cross-examine); United States v. Scales, 594 F.2d 558, 563-64 (6th Cir. 1979)

17  (summaries of testimonial evidence designed "to aid the jury in its examination of the evidence

18  already admitted" do not come within Rule 1006, but are authorized by Rule 611(a)), 5 Jack B.

19  Weinstein and Margaret A. Berger, Weinstein's Evidence, at ¶ 1006[03] (summary "prepared by a

20  witness from his own knowledge to assist the jury in understanding or remembering a mass of

21  details... is admissible, not under Rule 1006, but under such general principles of good sense as are

22  embodied in Rule 611(a)").

23          Revenue Agent Ramirez' summaries will include a summary of the bank deposits analysis,

24  a summary of defendant's unreported gross receipts, and tax computations regarding the taxpayer-

25  witnesses for whom defendant prepared tax returns as well as computations regarding defendant's

26  tax liability pursuant to community property rules applicable in California, and a summary of

27  defendant's outstanding tax liabilities with respect to her filed tax returns.  These summaries will

28  be based upon evidence introduced at trial, including witness testimony.

1   Such summaries themselves can also be properly admitted into evidence.  <u>See e.g.</u>, <u>United</u>

2   <u>States v. Shirley</u>, 884 F.2d 1130, 1133-34 (9th Cir. 1989).  In <u>Shirley</u>, the summary expert witness

3   compiled a summary of telephone records based on information already introduced into evidence.

4   "Summary evidence 'can help the jury organize and evaluate evidence which is factually complex

5   and fragmentally revealed in the testimony of the multitude of witnesses'." <u>Id.</u>, at 1133-34 (citing

6   <u>United States v. Lemire</u>, 720 F.2d 1327, 1348 (D.C. Cir. 1983); and <u>United States v. Meyers</u>, 847

7   F.2d 1408, 1412 (9th Cir. 1988) (properly admitting chart detailing long distance calls made by

8   various co-conspirators)); <u>Marchini</u>, 797 F.2d at 766.

9   Consequently, the United States believes that the court should admit into evidence the

10   testimony of the summary witness and summary schedules to assist the jury in this case.

11   Because these summaries will be based upon evidence admitted at trial, they will not be

12   finalized until shortly before the Revenue Agent Ramirez testifies.  Therefore, final copies of the

13   summary schedules will be provided to the defense shortly before the agent testifies.  However,

14   Revenue Agent Ramirez has prepared "draft" schedules reflecting the evidence the Government

15   anticipates will be admitted.  These "draft" schedules, which are internal Government work papers

16   and are protected from disclosure pursuant to Rule 16(a)(2) of the Federal Rules of Criminal

17   Procedure.  However, in the spirit of discovery, the United States has provided these "draft"

18   schedules to the defendant.

19   **B.    Business Records**

20   The Government intends to introduce into evidence domestic business records of various

21   title companies that issued payment by check to defendant in conjunction with her real estate

22   refinancing business, a portion of the bank records involved in the case, records of a local casino

23   showing the defendant's expenditures, and records of the entities showing defendant's tax return

24   preparer registration and compliance with continuing education requirements.  These records will

25   be introduced by certification or by a custodian of records.

26   1.    Fed. R. Evid. 803(6) excepts domestic business records from the hearsay rule:

27   A memorandum, report, record, or data compilation, in any form, of acts, events,
conditions, opinions, or diagnoses, made at or near the time by, or from information

28   transmitted by, a person with knowledge, if kept in the course of a regularly conducted
business activity, and if it was the regular practice of that business activity to make the

1    memorandum, report, record, or data compilation, all as shown by the testimony of the
2    custodian or other qualified witness, unless the source of information or the method or
     circumstances of preparation indicate lack of trustworthiness.

3         2.        A document is admissible under this Rule if two foundational facts are established:

4    (a) the document was made or transmitted by a person with knowledge at or near the time of the

5    incident recorded, and (b) the document was kept in the course of a regularly conducted business

6    activity.  See United States v. Ray, 920 F.2d 562, 565 (9th Cir. 1990), cert. denied, 111 S.Ct. 1084

7    (1991); Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 717 (9th Cir. 1990).  In determining

8    if these foundational facts have been established, the court may consider hearsay and other

9    evidence not admissible at trial.  See Fed. R. Evid. 104(a) and 1101(d)(1); Bourjaily v. United

10   States, 483 U.S. 171, 178-79 (1987).

11        3.        The foundation may be established either through a custodian of records, "other

12   qualified witness," or a certification of authenticity pursuant to Fed. R. Evid. 902(11).  The

13   Government has filed certifications of authenticity of domestic business records with the Court

14   (and provided such certifications to the defendant) to lay the foundation of admissibility of the

15   bank records summarized pursuant to Fed. R. Evid. 1006.  The Government has also filed with the

16   Court and provided to the defendant certifications of authenticity with respect to the records of the

17   various title companies.

18        4.        The Government need not establish precisely when or by whom a business record

19   was prepared; all the rule requires is that the document be made "at or near the time" of the act or

20   event it purports to record.  See Ray, 920 F.2d at 565-66; United States v. Huber, 772 F.2d 585,

21   591 (9th Cir. 1985); United States v. Basey, 613 F.2d 198, 201 n.1 (9th Cir. 1979), cert. denied,

22   446 U.S. 919 (1980).

23        **C.        Authentication and Identification**

24        1.        Fed. R. Evid. 901(a) provides that "[t]he requirement of authentication or

25   identification as a condition precedent to admissibility is satisfied by evidence sufficient to support

26   a  finding that the matter in question is what its proponent claims."

27        2.        Rule 901(a) only requires the Government to make a prima facie showing of

28   authenticity or identification "so that a reasonable juror could find in favor of authenticity or

17

1   identification." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991).  See also

2   United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989); United States v. Black, 767 F.2d

3   1334, 1342 (9th Cir.), cert. denied, 474 U.S. 1022 (1985).  Once the Government meets this

4   burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the

5   jury." Black, 767 F.2d at 1342.

6                    3.     Documents Seized in Search Warrant

7         The Government intends to introduce documents seized from the defendant during a search

8   warrant executed at her business through the Internal Revenue Agent search warrant team leader,

9   and documents obtained by a consent search of the garage of her daughter's residence (where

10   defendant stored her business records) through another Internal Revenue Special Agent.

11         To be admitted into evidence a physical exhibit must be in substantially the same condition

12   as when the crime was committed.  This determination is to be made by the trial judge and will not

13   be overturned except for clear abuse of discretion.  Factors the court may consider in making this

14   determination include the nature of the item, the circumstances surrounding its preservation, and

15   the likelihood of intermedlers having tampered with it.  See Gallego v. United States, 276 F.2d

16   914, 917 (9th Cir. 1960). The Government need not establish all links in the chain of custody of an

17   item or call all persons who were in a position to come into contact with it.  See Gallego, 276 F.2d

18   at 917.  Alleged gaps in the chain of custody go to the weight of the evidence rather than to its

19   admissibility.  See United States v. Jefferson, 714 F.2d 689, 696 (7th Cir. 1983).

20         A duplicate is admissible to the same extent as the original, unless there is a genuine

21   question as to the authenticity of the original or it would be unfair under the circumstances to

22   admit the duplicate in lieu of the original.  See Fed. R. Evid. 1003; United States v. Smith, 893

23   F.2d 1573, 1579 (9th Cir. 1990).

24                    4.     Domestic public documents under seal and certified copies of records of a public

25   agency

26         Certified records under seal of the official records of a public agency do not require

27   extrinsic evidence of authenticity as a condition precedent to admissibility.  Fed. R. Evid. 902(1).

28   The United States anticipates offering into evidence certified copies of certain Internal Revenue

1    Service records, including tax returns, Forms 4340, Certificate of Assessment and Payments, and

2    other Internal Revenue Service Records.  These records are self-authenticating and admissible

3    pursuant to Federal Rules of Evidence 902(1), 902(4), 803(8), and 1005.  See also United States v.

4    Hughes , 953 F.2d 531 (9th Cir. 1992).  The Government will also introduce an IRS Certification

5    of Lack of Record with respect to Gregory Garrett, Jr., which is self authenticating and admissible

6    pursuant to Fed. R. Evid. 803(10), 902(1) and 902(4).  United States v. Neff, 615 F.2d 1235, 1241-

7    42 (9th Cir. 1980).

8    **D.    Defendant's Statements**

9    1.    A statement is not hearsay if the statement is offered against a party and is the

10    party's own statement in either an individual or a representative capacity.  Fed. R. Evid.

11    801(d)(2)(A); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981).

12    2.    A statement is also not hearsay when it is:

13    a.    "a statement by a person authorized by the party to make a statement

14    concerning the subject" (Fed.R.Evid. 810(d)(2)(C); United States v. Gibson, 690 F.2d 697, 700-01

15    (9th Cir. 1982)); or

16    b.    "a statement by the party's agent or servant concerning a matter within the

17    scope of the agency or employment, made during the existence of the relationship (Fed.R.Evid.

18    810(d)(2)(D); United States v. Flores, 673 F.2d 173, 178 (9th Cir. 1982); or

19    c.    "a statement by a coconspirator of a party during the course and in

20    furtherance of the conspiracy" (Fed.R.Evid. 810(d)(2)(E)).  Rule 801(d)(2) (E) is applicable to a

21    co-conspirator's statement made during the pendency of a conspiracy regardless of whether

22    conspiracy has been charged in the indictment.  United States v. Williams, 435 F.2d 642, 645 (9th

23    Cir.1970).

24    The Government intends to introduce statements made by the defendant and the

25    defendant's husband who was acting as the defendant's unpaid employee, agent, and co-

26    conspirator.  The statements were made to the Special Agent Cecilia Braga during the undercover

27    operation.  The Government also intends to introduce statements and admissions made by the

28    defendant to two IRS Special Agents during two interviews conducted with the defendant.

1  Pursuant to Rule 801, none of these statements are hearsay and are admissible against the

2  defendant.

3       3.      When the Government admits some of a defendant's prior oral statements, the door

4  is not thereby opened to the defendant to put in all of his out-of-court statements, because when

5  offered by the defendant, the statements are hearsay.  Fed. R. Evid. 801(d)(2); <u>United States v.</u>

6  <u>Ortega</u>, 203 F.3d 675, 681 (9th Cir. 2000) (holding a defendant's non-self-inculpatory statements

7  are inadmissible even if they were made contemporaneously with other self-inculpatory

8  statements); <u>see</u> <u>also</u> <u>United States v. Burreson</u>, 643 F.2d 1344, 1349 (9th Cir. 1981) (holding

9  the district court did not abuse its discretion in excluding evidence pursuant to the Fed. R. Evid.

10  106 because it was irrelevant and inadmissible hearsay); <u>United States v. McCorkle</u>, 511 F.2d 482,

11  486 (7th Cir. 1975) (defendant's exculpatory statements to IRS in failure to file tax return case

12  properly excluded).

13       DATED: September 2, 2008

14

15                                                 Respectfully submitted,
                                                   KAREN P. HEWITT
                                                   United States Attorney
16

17

18                                                 /s/ Christopher S. Strauss
                                                   Christopher S. Strauss
19                                                 Special Assistant United States Attorney
                                                   Attorney for Plaintiff
20                                                 United States of America
                                                   Email: **Christopher.S.Strauss@usdoj.gov**
21

22                                                 /s/ Elizabeth C. Hadden
                                                   Elizabeth C. Hadden
23                                                 Special Assistant United States Attorney
                                                   Attorney for Plaintiff
24                                                 United States of America
                                                   Email: **Elizabeth.C.Hadden@usdoj.gov**
25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 08CR0918-L |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| FE S. GARRETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Christopher S. Strauss, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.

I will cause service of GOVERNMENT'S TRIAL MEMORANDUM on defendant FE S. GARRETT, pro se, by hand-delivery in the United States District Court on September 3, 2008 during the motions hearing set before Hon. M. James Lorenz.

I have caused service of  GOVERNMENT'S TRIAL MEMORANDUM on defendant's standby counsel by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

Erica Kristine Zunkel                                    Erica_zunkel@fd.org
Federal Defenders of San Diego
225 Broadway, Suite 900
San Diego, CA 92101

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2008

/s/ Christopher S. Strauss
CHRISTOPHER S. STRAUSS
Special Assistant United States Attorney